16 February 2000

No. 2--98--0753

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

GRACEIA M. VOYLES, ) Appeal from the Circuit Court

) of Du Page County.

    Plaintiff-Appellant and )

Cross-Appellee, ) No. 92--L--1769

)

v. )

)

SANDIA MORTGAGE CORP., n/k/a )

Fleet Mortgage Corp., ) 

     ) Honorable

Defendant-Appellee and ) Paul Noland,

Cross-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial in which plaintiff, Graceia M. Voyles, was awarded damages totaling $10,000, plaintiff appeals the judgment of the circuit court of Du Page County.  Defendant, Sandia Mortgage Corporation, cross-appeals.

The following information was adduced at trial.  In 1976, plaintiff purchased a single-family residence in Springfield, Illinois, and financed the purchase with a mortgage from Citizen's Savings & Loan.  In 1979, plaintiff moved to the Chicago area and found employment.  Plaintiff still owned the Springfield home and rented it to a tenant.  In 1981, plaintiff purchased a home in Northbrook, Illinois, financed with a mortgage from Citibank FSB (Citibank).

In 1987, plaintiff sold her Northbrook home and purchased a home in Naperville, again financed with a Citibank mortgage.  Plaintiff's mother became seriously ill in 1987 and moved in with plaintiff in her Naperville home.  Plaintiff's mother died later that year.  Plaintiff's son also died in September 1987, and plaintiff initiated guardianship proceedings to obtain custody of her granddaughter.  In 1989, plaintiff was granted permanent guardianship over her granddaughter and brought her to live with plaintiff in her Naperville home.

As a result of plaintiff's personal problems from 1987 to 1989, she made arrangements with her Springfield tenant (her attorney at trial and on appeal) to assume the responsibility of making all payments related to the Springfield property.  Thus, the tenant made the monthly mortgage payments to Citizen's Savings & Loan.  Citizen's Savings & Loan questioned plaintiff as to why the mortgage and insurance payments for the Springfield property were not made in her name.  Following plaintiff's explanation, Citizen's Savings & Loan issued a passbook to the tenant, who used it to make all payments to Citizen's Savings & Loan during the next five years.

In 1991, Citizen's Savings & Loan was taken over by the Resolution Trust Corporation, which assigned plaintiff's loan to defendant.  Plaintiff's Springfield tenant then sent the mortgage payments directly to defendant.

In September 1991, defendant began rejecting the mortgage payments.  Defendant apparently believed that the tenant had obtained ownership of the Springfield property in violation of the mortgage.  Plaintiff's tenant continued to tender the mortgage payments to defendant, and defendant continued to refuse to accept them.  According to defendant, it had reviewed the escrow account and found that the monthly escrow payments were insufficient to cover the annual property tax.  According to defendant, therefore, it increased the monthly mortgage payment to reflect the increase in the amount of the monthly escrow payment.  The trial court found, however, that defendant never actually notified plaintiff that it was increasing the monthly mortgage payments.  According to defendant, as a result of the shortfall in plaintiff's tenders, defendant rejected the payments.  In October 1991, defendant reported that plaintiff was delinquent in her mortgage payments to the credit reporting agencies of TransUnion and TRW.

Plaintiff's tenant continued to tender mortgage payments to defendant, all of which defendant rejected.  In January 1992, plaintiff agreed that defendant was correct in demanding a higher amount and attempted to pay off the mortgage arrears by tendering the full amount due and owing.  Defendant rejected this tender because one of the checks comprising the tender was drawn on the Springfield tenant's personal account, and the other check, an insurance payment for repairs on the Springfield property, was made out to both the tenant and Citizen's Savings & Loan.  Plaintiff again attempted to pay the arrearage but mistakenly omitted the amount of the Springfield tenant's personal check.  In addition, another month's rent was due, so defendant again rejected plaintiff's attempt to cure her delinquency.

In February 1992, defendant initiated foreclosure proceedings and reported this to TransUnion and TRW.  In March 1992, plaintiff attempted to refinance her mortgage with Citibank to take advantage of lower interest rates.  Plaintiff wished to add her car payments to her mortgage and thus improve her cash flow and receive tax benefits.

After receiving her refinancing application, Citibank performed a credit check, which revealed plaintiff's delinquency in making her mortgage payments and the pending foreclosure action reported by defendant.  Citibank notified plaintiff about her credit situation and informed her that the foreclosure would prevent her from getting the loan.  Citibank also apparently determined that plaintiff's application was incomplete and informed plaintiff by letter dated April 2, 1992.  

On April 9, 1992, defendant advised plaintiff for the first time about its concern that the due-on-sale clause of the mortgage on the Springfield property was violated.  Plaintiff then advised defendant that the foreclosure proceeding was preventing plaintiff from obtaining the loan from Citibank.  On June 10, 1992, defendant informed Citibank that it should disregard the foreclosure and delinquencies it had reported.  James Duran, defendant's vice-

president, wrote to Deborah Mabeley, who was processing plaintiff's loan application for Citibank, that defendant had a dispute with plaintiff's lawyer, Wayne Golomb.  Duran wrote that defendant was challenging the lawyer's power of attorney over the Springfield mortgage, had accelerated the debt, and was returning payments tendered by Golomb on plaintiff's behalf.  Duran conceded that plaintiff's credit history should not have been harmed by defendant's dispute with Golomb and that it was issuing corrections for any reported delinquencies.  Citibank received defendant's letter on June 16, 1992.  Plaintiff, however, was unexpectedly terminated from her job on June 12, 1992.

After receiving defendant's June 10 letter, Citibank completed processing plaintiff's loan application.  Citibank refused to refinance plaintiff's loan on July 13, 1992, as a result of plaintiff's unemployment, although it rated plaintiff's credit as satisfactory.

On September 3, 1992, plaintiff filed suit against defendant, alleging negligent reporting of credit information (count I); negligent failure to correct falsely reported credit information (count II); breach of contract directed against Citibank (count III); breach of defendant's duty of good faith and fair dealing (count IV); and tortious interference with prospective economic advantage (added on October 24, 1997).  Plaintiff sought compensatory damages and, alleging that defendant's conduct was willful, requested punitive damages (count V).  Defendant filed a motion for summary judgment, which was granted.  Plaintiff appealed, and this court reversed and remanded.  
Voyles v. Sandia Mortgage Co.
, No. 2--94--0158 (1995) (unpublished order under Supreme Court Rule 23).

The case proceeded to trial on September 4, 1997.  During trial, plaintiff, a licensed realtor, attempted to introduce evidence concerning the expected value of her Naperville property.  Plaintiff was seeking damages for having to sell the Naperville home earlier than she had planned as a result of not receiving the refinancing loan from Citibank.  Plaintiff made an offer of proof in which her attorney stated that she intended to stay in the Naperville house until her granddaughter graduated from high school.  Because she did not obtain refinancing on her mortgage, her savings were depleted by October 1993 and she was forced to sell the home.  Plaintiff also stated that she bought the house for $262,000 in 1987; it was valued at $330,000 at the time she applied for the refinancing, and it sold for $344,000 in 1994.  The trial court did not allow the testimony into evidence, ruling that it was speculative.

The trial court entered judgment for plaintiff on counts I and II and awarded damages totaling $10,000.  The trial court found that plaintiff had failed to prove a breach of defendant's duty of good faith and fair dealing, a cause of action for defamation as well as the existence of special damages, or that defendant acted intentionally.  The trial court accordingly held that plaintiff could not recover on her claims for the tortious interference with prospective economic advantage and the breach of the duty of good faith and fair dealing claims and that she could not recover punitive damages.  Plaintiff timely appeals and defendant timely cross-appeals.

We turn first to plaintiff's appeal.  Plaintiff first contends that the trial court erred by finding that she had not proved that defendant violated the implied covenant of good faith and fair dealing.  The covenant of good faith and fair dealing is a derivative principle of contract law that usually aids in the construction of a contract.  
Perez v. Citicorp Mortgage, Inc.
, 301 Ill. App. 3d 413, 424 (1998).  This covenant comes into play where one party to the contract is given broad discretion in performance.  
Perez
, 301 Ill. App. 3d at 423-24.  The party holding this broad discretion under the contract is required to exercise its discretion " 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.' " 
Perez
, 301 Ill. App. 3d at 424, quoting 
Resolution Trust Corp. v. Holtzman
, 248 Ill. App. 3d 105, 112 (1993).  Plaintiff argues that she proved at trial that defendant violated the covenant of good faith and fair dealing.  Defendant counters that the duty of good faith and fair dealing does not form the basis of a separate and independent tort recognized in Illinois, citing to 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 519 (1996).  We find, however, that 
Cramer
 is distinguishable from the instant case.

The issue in 
Cramer
 was whether an insured's claim against his insurer alleging that the insurer breached its duty of good faith and fair dealing in denying him his insurance proceeds could proceed.  
Cramer
, 174 Ill. 2d at 515.  Our supreme court determined that it could not, because section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)) provided the only available extracontractual remedy for plaintiffs.  
Cramer
, 174 Ill. 2d at 527.  The court emphasized that it would not create a common-law tort where the legislature had acted to provide a limited remedy and where that remedy had been regularly updated by the legislature.  
Cramer
, 174 Ill. 2d at 527-28.  In the instant case, however, the legislature has not intervened to remedy the abuses of lenders in the home mortgage field.  Further, the court's analysis included only the line of cases beginning with 
Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.
, 29 Ill. App. 3d 339 (1975), 
rev'd on other grounds
, 64 Ill. 2d 338 (1976), all of which dealt with bad faith claims against insurers.  The court's analysis did not cover bad faith claims arising from other contexts.  Thus, we find that 
Cramer
 does not control the outcome of this case.  

We note that recent decisions indicate that courts have implicitly accepted the existence of the tort of bad faith in lender-mortgagee scenarios.  In 
Perez
, the court did not hold that plaintiff could not state a cause of action because the tort did not exist under Illinois law; rather, the court merely found that the plaintiff had failed to properly plead his cause of action because the terms of the contract on which the suit was based trumped any implied terms, such as the implied duty of good faith and fair dealing.  
Perez
, 301 Ill. App. 3d at 423-25.  In 
Citicorp Savings v. Rucker
, 295 Ill. App. 3d 801, 808 (1998), the court found that there were factual issues raised by the pleadings that defeated the bank's motion to dismiss, allowing the claim to go forward.  The 
Rucker
 court, therefore, determined that Rucker could proceed on his claim for the breach of the duty of good faith and fair dealing.  Thus, contrary to defendant's assertion, Illinois courts have tacitly recognized the viability of such a claim.

Additionally, considering the record, we conclude that plaintiff has proved her action in tort for breach of the duty of good faith and fair dealing.  See 
Perez
, 301 Ill. App. 3d at 424 (gravamen of action is the arbitrary and capricious use of contractually vested discretion).  The trial court specifically found, and the evidence amply supports, that defendant failed to provide plaintiff with notice that it was increasing the amount of her monthly payments before doing so in September 1991.  Rather than acting to correct the problem it had caused, defendant rejected plaintiff's attempts to set the account straight.  Thus, while defendant had the discretion to fix an appropriate tax escrow payment, it was required to notify plaintiff beforehand of its intention to increase her monthly payments.  Further, once defendant had increased plaintiff's monthly payment without first providing her notice, it acted arbitrarily and capriciously in rejecting her partial tenders and subsequent efforts to work out an amicable solution.  Indeed, the evidence thus points to only one conclusion: defendant wrongfully manufactured the credit controversy in an attempt to foreclose on the property.  Based on the narrow circumstances of this case, we hold that plaintiff proved her claim that defendant acted in bad faith and breached its duty of good faith and fair dealing.  We therefore reverse the trial court's finding as to plaintiff's good faith and fair dealing claim.  In addition, we also remand this claim for further proceedings to determine plaintiff's damages.

We note that the concern that the recognition of a tort of bad faith and unfair dealing will swallow ordinary breach of contract cases is minimal in this case.  This case involved a homeowner whose long-standing and personal relationship with the lender was terminated by defendant's purchase of the assets of the original lender.  Defendant then embarked on a course of action to force plaintiff into foreclosure by raising her monthly payments with no notice and then arbitrarily and capriciously refusing plaintiff's tender of amounts owing.  Defendant's conduct was intentional and outrageous.  In the future, in order to state a claim for bad faith, a defendant's conduct would have to be similarly egregious and outrageous.  Further, this is not a case in which a sophisticated real estate developer and a lender entered into an arm's-length agreement that did not pan out.  Plaintiff had no choice in the matter, as defendant assumed plaintiff's mortgage.  Moreover, plaintiff was not a sophisticated developer; rather, she was a homeowner.  Finally, we note that, like employment and insurance cases, this case concerns an area of great personal importance to any prospective plaintiff, namely, her home mortgage.  Thus, in our view, the wrongfulness of defendant's conduct, plaintiff's lack of choice in dealing with defendant, the inequality of plaintiff's position in relation to defendant, and the vital importance of plaintiff's interest in her home mortgage establish the hallmarks of any future bad faith claims arising from a lender's misconduct. 

Plaintiff next contends that the trial court's determination that defendant's conduct was not intentional was against the manifest weight of the evidence.  We will not disturb the trial court's factual determination unless it is against the manifest weight of the evidence.  
Zeitz v. Village of Glenview
, 304 Ill. App. 3d 586, 592 (1999).

Plaintiff contends that the evidence demonstrates that defendant acted intentionally in making false statements about plaintiff's creditworthiness to the various credit reporting agencies.  We agree.  Intentional conduct evinces " 'a desire to cause consequences or at least [a] substantially certain belief that the consequences will result.' "  
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 272 (1994), quoting 1 M. Polelle & B. Ottley, Illinois Tort Law §1.01, at 1--3 n.8 (2d ed. 1993).  Negligent conduct, by contrast, is defined as " 'a failure to exercise the care that a reasonable [person] of ordinary prudence would exercise to guard against any reasonably foreseeable, unreasonable risks of harm which might flow from his conduct.' "  
Ziarko
, 161 Ill. 2d at 272, quoting 
Beccue v. Rockford Park District
, 94 Ill. App. 2d 179, 190 (1968).  Thus, intentional conduct is purposeful and directed toward a specific end, while negligent conduct is careless or accidental.

In this case, our review of the record indicates that the evidence overwhelmingly shows that defendant acted intentionally in damaging plaintiff's credit reputation.  Plaintiff notes that defendant has never claimed that it acted inadvertently or through oversight in giving plaintiff's financial information to the credit reporters.  Indeed, defendant informed plaintiff that it would report plaintiff's delinquency to credit agencies even though it admitted that it had received plaintiff's attempts to pay off the delinquencies.  In fact, defendant informed the credit agencies about the delinquency and foreclosure.  Therefore, we hold that the trial court's finding that defendant did not act intentionally is against the manifest weight of the evidence.

Defendant appears to suggest that, because plaintiff did not cite to the record in its argument on this point, she has waived the argument or that the evidence does not support plaintiff's argument.  We disagree.  While plaintiff did not cite to the precise page in the record to support her factual arguments, she properly cited to the record in her statement of facts.  Her factual argument on this issue is not so defective as to constitute waiver.  In any event, waiver is a limitation on the parties and not the court.  
American Federation of State, County & Municipal Employees, Council 31, AFL-CIO v. County of Cook
, 145 Ill. 2d 475, 480 (1991).  Moreover, we have conducted a thorough review of the record and find her claims to be factually well grounded and supported by the evidence.

Defendant also argues that plaintiff's intent argument was erroneous as a matter of law.  According to defendant, "[f]or conduct to be intentional, a person must commit the act and he must also intend to produce the harm."  
Wells v. I F R Engineering Co.
, 247 Ill. App. 3d 43, 46 (1993).  Defendant argues that it did not intend to produce any harm by reporting plaintiff's delinquency or foreclosure to the credit agencies.  Defendant's argument is unavailing.  A bank does not report a delinquency to a credit reporting agency or institute and report a foreclosure in order to benefit the debtor; rather, such reports will always harm the debtor's credit reputation.  The evidence in this case shows that defendant stated its intention to report plaintiff's delinquency and foreclosure to the credit agencies and did, in fact, make such a report.  Thus, the record establishes that defendant intended to cause harm to plaintiff's credit rating.  The record further shows that defendant actually harmed plaintiff's credit reputation as evidenced by plaintiff's inability to obtain refinancing for her Citibank mortgage on her Naperville home in spite of the fact that she was a long-time customer of Citibank and had an otherwise acceptable credit rating with Citibank.  Accordingly, we reject defendant's contention.

Plaintiff next argues that she proved her claim for tortious interference with prospective economic advantage.  The trial court found that, "because of Plaintiff's failure to prove that Defendant's conduct was intentional, Plaintiff has failed to prove a cause of action for Tortious Interference with Prospective Economic Advantage."  Because the record demonstrates that defendant's conduct was intentional, we vacate the trial court's judgment in favor of defendant as to the tortious interference count and remand for further proceedings on this claim.

Plaintiff next contends that the trial court erroneously determined that she had not proved her claim for defamation.  The trial court held that, while plaintiff had pleaded a cause of action for defamation 
per
 
quod
, she had not proved either special damages or an injury to her reputation, thus failing to prove defamation.

Defamation is defined as "the publication of anything injurious to the good name or reputation of another, or which tends to bring him into disrepute."  
Muck v. Van Bibber
, 223 Ill. App. 3d 830, 834 (1992).  A defamatory statement is one that "impeaches a person's integrity, virtue, human decency, or reputation and thereby lowers that person in the estimation of the community or deters third parties from dealing with that person."  
Muck
, 223 Ill. App. 3d at 834.  In an action for defamation 
per
 
quod
, in addition to the other elements of defamation, the plaintiff must also prove the existence of special damages or pecuniary loss.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 103 (1996).  

Plaintiff contends that she proved special damages.  We agree.  The trial court found that plaintiff experienced a pecuniary loss as a result of the denial of her loan application.  This satisfies the special damages element of defamation 
per
 
quod
.

Defendant contends that plaintiff failed to demonstrate that her reputation for creditworthiness was in any way impaired.  Defendant's assertions are unpersuasive.  Plaintiff proved that she was prevented from obtaining refinancing on her loan as a result of defendant's defamatory statements.  Moreover, the publication of the defamatory information to the credit agencies could have no other effect than to impair plaintiff's credit reputation.  Accordingly, we hold that the trial court's determination that plaintiff failed to prove defamation was against the manifest weight of the evidence.  Therefore, we reverse the judgment of the trial court and remand for further proceedings on the issue of damages for defamation.

Plaintiff next contends that the trial court erroneously barred some of her evidence on damages.  Because plaintiff will have the opportunity to fully present her theory of damages in the trial court, any pronouncements as to what evidence is admissible before the trial court would amount to an advisory opinion.  Therefore, we will not address the admissibility of the particular evidence in support of plaintiff's theory of damages.

Plaintiff last contends that the trial court erroneously denied her claim for punitive damages.  We agree.  Because the trial court erroneously concluded that defendant's conduct was not intentional, it did not consider the propriety of granting plaintiff punitive damages.  Thus, in light of our determination that defendant's conduct was intentional, plaintiff may pursue her claim for punitive damages on remand.

Defendant contends that plaintiff's prayer for punitive damages is barred by section 2--604.1 of the Code of Civil Procedure (735 ILCS 5/2--604.1 (West 1996)).  Section 2--604.1, by its terms, applies to actions for bodily injury based on negligence or product liability.  In this case, plaintiff has pleaded and proved that defendant committed intentional torts and, thus, section 2--604.1 does not apply.

Turning to defendant's cross-appeal, defendant first contends that plaintiff's claims are barred by the economic loss doctrine enunciated in 
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69 (1982).  We note, however, that damages for economic losses are permitted where the plaintiff claims tortious interference with prospective business advantage.  
Werblood v. Columbia College
, 180 Ill. App. 3d 967, 974 (1989).  The reason that a plaintiff is allowed to recover economic losses in that situation is that "the defendant owes a duty in tort to prevent precisely the type of harm, economic or not, that occurred."  
2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.
, 136 Ill. 2d 302, 315 (1990).  That is precisely the situation plaintiff faces in this case, and, accordingly, we hold that, because we have determined that plaintiff is entitled to proceed on her claim of tortious interference with a prospective business advantage, the economic loss doctrine does not apply to this case.  The same conclusion applies equally to any damages the court awards under plaintiff's defamation theory, as the economic harm caused by defendant to plaintiff's credit reputation is exactly that which defendant is under a duty in tort to prevent.

Defendant next contends that it did not breach the mortgage contract.  We disagree.  Defendant argues that it gave plaintiff notice that her mortgage payment was being increased.  The trial court found and the record supports that, contrary to defendant's assertions, no notice of the increase was given to plaintiff.  The trial court's determination, therefore, was not against the manifest weight of the evidence.

Defendant last argues that the trial court erroneously found that defendant's actions proximately caused Citibank to reject plaintiff's loan application.  Defendant contends that Citibank rejected plaintiff's application due to its inability to verify plaintiff's employment.  We disagree.  The entire point of plaintiff's action, found by the trial court and supported by the record, is that, but for defendant's wrongful actions in reporting plaintiff's delinquency and initiating a foreclosure, she would have received the loan from Citibank before she was fired from her job.  In other words, the fact that Citibank ultimately was unable to verify plaintiff's employment would not have come into play had not defendant's actions harmed plaintiff's credit reputation.  The record shows that Citibank would not have extended a loan to plaintiff under any circumstances while she had a pending foreclosure on her credit report.  The trial court found, and we agree, that, in the absence of defendant's wrongful actions, Citibank would have granted plaintiff's loan.  Therefore, we reject defendant's final contention.

One final matter for our consideration remains:  the effects of our rulings on the existing judgment for plaintiff.  While we have not disturbed the trial court's ruling on plaintiff's claims for negligent reporting and failure to correct credit information, we reversed the trial court's ruling on plaintiff's intentional tort claims and remanded the cause for further hearings on plaintiff's damages arising from these claims.  In addition, while not commenting on the propriety of the trial court's ruling concerning certain evidentiary elements of plaintiff's damages, we held that plaintiff would be allowed to attempt to prove these elements at the damages hearing.  Therefore, considering the effect of our rulings in this matter, we vacate plaintiff's $10,000 award of damages on her negligence claims and remand the cause for further hearings on these damages as well as the damages arising from the intentional tort claims.

Accordingly, for the foregoing reasons, we vacate that part of the judgment awarding plaintiff damages on plaintiff's negligence claims; we reverse that part of the judgment that found for defendant and against plaintiff on plaintiff's claims not sounding in negligence; and we remand the cause for further proceedings consistent with this opinion.

Vacated in part and reversed in part; cause remanded.

McLAREN and GEIGER, JJ., concur.