(No. 89201.—

GRACEIA M. VOYLES, Appellee, v. SANDIA MORT-GAGE CORPORATION, n/k/a Fleet Mortgage Corporation, Appellant.

*Opinion filed May 24, 2001.—Rehearing denied June 29, 2001.*

THOMAS, J., took no part.

William A. Von Hoene, Jr., Barry Levenstam and Shelley Malinowski, of Jenner & Block, of Chicago, for appellant.

Wayne R. Golomb, of Springfield, for appellee.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

The plaintiff, Graceia M. Voyles, brought the present action in the circuit court of Du Page County against the defendant, Sandia Mortgage Corporation (now known as Fleet Mortgage Corporation), seeking damages for the defendant's submission of allegedly inaccurate reports about her to credit reporting agencies. Following a bench trial, the trial judge awarded the plaintiff a total of $10,000 in damages, finding that the defendant was negligent in submitting certain information to the credit reporting agencies and in failing to timely correct alleged inaccuracies therein. The trial judge denied the plaintiff recovery on several other theories of recovery, including defamation, tortious interference with prospective eco-

nomic advantage, and breach of duty of good faith and fair dealing. The court also denied plaintiff's request for punitive damages based upon her claim that defendant had acted wilfully. Plaintiff appealed, and defendant cross-appealed.

The appellate court did not disturb the trial court's ruling of liability on plaintiff's claims for negligent reporting of credit information and failure to timely correct alleged inaccuracies; however, in light of its disposition of plaintiff's other claims, the appellate court vacated the trial court's award of damages on the negligence counts and remanded for hearings on damages related thereto. Finding that the defendant had acted intentionally, the appellate court reversed the trial court's judgment in favor of the defendant on the plaintiff's other claims and remanded the cause to the circuit court for hearings on plaintiff's damages arising from those claims as well. 311 Ill. App. 3d 649. We allowed the defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

The facts pertinent to our disposition may be stated briefly. In 1976 the plaintiff bought a single-family home in Springfield, financing the purchase with a loan from a local lender, Citizens Savings and Loan Association (Citizens). In 1979, the plaintiff moved to the Chicago area. Late in 1981 or early in 1982, plaintiff's lawyer, Wayne Golomb, moved into the residence and eventually began making the mortgage payments. Subsequently, Citizens failed and was placed in receivership under the Resolution Trust Corporation. The plaintiff's loan was subsequently sold to another entity, and defendant Sandia Mortgage Corporation began servicing the loan in April 1991. The defendant soon discovered that the assessment on the property had increased, causing the plaintiff's real estate taxes to rise. Because of that

increase, the escrow that had been established to cover property taxes on the property had become insufficient. To make up for the deficiency, the defendant increased the plaintiff's monthly mortgage payment from $503 to $582. The increased payments were reflected in a mortgage payment booklet sent to the plaintiff in the summer of 1991. Golomb noticed that the required monthly payment had increased and, on August 7, 1991, he sent a note to the defendant questioning the new amount. On August 16, one of the defendant's customer service representatives called Golomb. A note she made of the conversation stated, "I called Mr. Golomb this a.m. He was very vague, stating that he is sending us the payments on this mortgage and wants us to send mail to him—told him to send power of attny [sic] from Mrs. Voyles." Apart from the insufficient escrow, the defendant was also concerned that the property might have been sold by the plaintiff to Golomb, activating the due-on-sale clause in the mortgage.

Notwithstanding the August 16 conversation, Golomb sent defendant checks in the old amount of $503 in September and October for payment of the mortgage— less than the new monthly payment of $582. The defendant returned those checks with a letter to plaintiff dated October 3, 1991. The defendant explained that the loan was delinquent and set forth the total payment required for reinstatement. The defendant recommended that the correct amount be paid to reinstate the account and to avoid having adverse information placed on the plaintiff's credit record. In defendant's letter, it provided telephone numbers where plaintiff could request further information or discuss the matter in greater detail.

Golomb sent a check for only $503 in November 1991. On November 7, 1991, he sent a letter to defendant cautioning defendant against further contact with the plaintiff/mortgagor, stating his opinion that the last pay-

ment on the loan had been rejected without cause, and threatening suit.

On December 17, 1991, the defendant, by its assistant vice-president, James Duran, sent Golomb a letter informing him that the payments for August, September, October, and November were due and that plaintiff owed a total of $2,328. Duran again offered to answer any questions about the account.

Early in January 1992, Golomb sent the defendant two checks totaling the amount due. One was an insurance company check payable to the defunct Citizens Savings & Loan for $1,669.50, which had been issued as compensation for certain repairs on the home; the second check was Golomb's personal check for the balance. In response, the defendant returned both checks to Golomb, stating that it could not accept the insurance company check because Citizens was listed as the payee; the defendant further explained that even if the defendant *were* designated the payee, defendant could not accept the check until repairs to the property were completed, repair bills were paid in full with copies thereof submitted to defendant, executed and notarized lien waivers were completed by each contractor involved, and Golomb signed an insurance claim affidavit.

Golomb responded by sending the defendant his personal check for $582, representing the *correct* monthly payment due in late January. The next week, Golomb sent a check for $1,669.50. Because a balance of $658.50 remained, however, the defendant returned the checks to Golomb, stating that the *entire* amount due would have to be paid to avoid default. The defendant reiterated that concern in a letter to the *plaintiff* on February 4, 1992, explaining that it would not accept less than the full amount due and that it would institute foreclosure proceedings if it did not receive full payment. At the same time, the defendant referred the matter to its foreclosure

department. Later that month, Golomb sent the defendant a letter stating that he would not make any further payments on the loan.

As a result of this ongoing dispute, defendant informed two credit reporting agencies, TRW and Trans Union, of the status of the plaintiff's mortgage and of the initiation of foreclosure proceedings. Reports issued by those companies reflected that foreclosure proceedings had been instituted and that the last payment had been received in July 1991. Golomb ultimately paid the arrearage and, as the defendant's records indicate, defendant then reinstated the mortgage "out of foreclosure" effective June 3, 1992.

As noted earlier, the plaintiff did not occupy the Springfield house but was instead living in the Chicago area, in Naperville. In March 1992, the plaintiff attempted to refinance the mortgage on her house in Naperville, and she submitted an application to Citibank, the original lender on that property. In the course of processing the plaintiff's application, Citibank obtained credit reports on the plaintiff from the two credit reporting agencies. Those reports stated that plaintiff's mortgage on the Springfield property was in foreclosure. In June of 1992, after receiving full payment, the defendant notified Citibank that the Springfield mortgage was no longer delinquent. Thereafter, Golomb supplied Citibank with *additional* information required by Citibank to complete plaintiff's application. That information was not related to the controversy between plaintiff and defendant. Citibank ultimately denied the plaintiff's application for a new loan on the Naperville property for a reason unrelated to credit reporting: the plaintiff was no longer employed. Citibank concluded that plaintiff's credit status was "satisfactory."

In September 1992, the plaintiff initiated the present action against the defendant in the circuit court of

Du Page County. The plaintiff alleged that the defendant was negligent in reporting information about her to the credit agencies and in failing to promptly correct falsely reported information. The trial court originally ruled for the defendant, granting summary judgment for the defendant on the ground that the plaintiff could not establish that the defendant's conduct proximately caused the plaintiff's injury: Citibank's denial of the plaintiff's application for refinancing. In an appeal from that ruling, the appellate court reversed the circuit court judgment and remanded the cause for further proceedings, finding the existence of several questions of material fact that precluded entry of summary judgment. *Voyles v. Sandia Mortgage Co.*, No. 2—94—0158 (1995) (unpublished order under Supreme Court Rule 23). On remand, the plaintiff added a further claim to her action, alleging the breach of an implied duty of good faith and fair dealing, and seeking an award of punitive damages. After the bench trial was conducted, but before the judge issued his ruling, the plaintiff added yet another count, alleging tortious interference with prospective business advantage. Also, the plaintiff argued that the negligent-reporting counts should be construed as defamation claims.

The trial judge ultimately awarded the plaintiff a total of $10,000 in compensatory damages on the two negligence counts, agreeing with the plaintiff that the defendant had issued false or inaccurate credit reports without exercising due care. The judge ruled against the plaintiff, however, on the counts alleging breach of an implied duty of good faith and fair dealing and tortious interference with prospective business advantage. The judge found that the defendant's conduct was not intentional. The trial court also rejected the plaintiff's defamation claims, concluding that she had failed to prove special damages.

Both parties appealed. The appellate court disagreed with the trial judge's finding that the defendant had not acted intentionally. The appellate court believed that the defendant had "embarked on a course of action to force plaintiff into foreclosure by raising her monthly payments with no notice and then arbitrarily and capriciously refusing plaintiff's tender of amounts owing." 311 Ill. App. 3d at 656. The appellate court entered judgment for the plaintiff on the counts rejected by the trial judge: breach of the duty of good faith and fair dealing, tortious interference with prospective economic advantage, and defamation. As previously noted, the appellate court vacated the award of damages on the negligence counts and remanded the cause to the circuit court for reconsideration of the plaintiff's damages on all counts. 311 Ill. App. 3d at 661.

The defendant first argues that the appellate court erred in recognizing an independent cause of action in tort for the alleged breach of an implied duty of good faith and fair dealing arising from a contract. For the reasons that follow, we decline to recognize the cause of action in the circumstances of this case.

Until the decision below, appellate court panels which had squarely addressed the question had consistently refused to recognize an independent tort for breach of the implied duty of good faith and fair dealing in a contract. See, *e.g.*, *Harris v. Adler School of Professional Psychology*, 309 Ill. App. 3d 856, 860-61 (1999); *Coleman v. Madison Two Associates*, 307 Ill. App. 3d 570, 578 (1999); *Guardino v. Chrysler Corp.*, 294 Ill. App. 3d 1071, 1080 (1998); *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995); *Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 267 (1991); *Carlson v. Carlson*, 147 Ill. App. 3d 610, 614 (1986).

In *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996), this court considered an analogous question

arising in the insurance context. In that case, this court refused to recognize an independent action in tort for breach of an implied covenant of good faith and fair dealing, stating that the claim would be proper only in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder. Discussing the requirement of good faith and fair dealing implicit in all contracts, this court explained:

> "This principle ensures that parties do not try to take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract. [Citations.] This contractual covenant is not generally recognized as an independent source of duties giving rise to a cause of action in tort. [Citations.]" *Cramer*, 174 Ill. 2d at 525.

As we have noted, *Cramer* recognized an exception to that rule. This court stated in *Cramer* that a separate action in tort would remain available when an insurer breaches its duty to settle an action brought against the insured by a third party. The court reasoned that in *that* setting the insured relies on the insurer for defense of the action, yet the insurer's interest in defeating the claim may conflict with the insured's interest in avoiding a judgment that exceeds the amount of the policy limits. The policy does not spell out the insurer's duty to settle, however, and therefore tort law remains an appropriate ground on which to evaluate the insurer's conduct. *Cf. Cramer*, 174 Ill. 2d at 525-26. *Cramer* distinguished duty-to-settle cases from actions by an insured against its insurer arising from the insurance contract. The court noted, in the latter context, "The policyholder does not need a new cause of action to protect him from insurer misconduct where an insurer refuses to pay. The policyholder has an explicit contractual remedy." *Cramer*, 174 Ill. 2d at 526.

*Cramer*, as well as the line of appellate cases previ-

ously cited, would thus bar the plaintiff's tort action here for breach of the implied covenant of good faith and fair dealing. The appellate court below, however, believed that *Cramer* was distinguishable on the ground that it involved an action under the Illinois Insurance Code, which contains a statutory remedy for the insured in that case. The appellate court theorized that in the absence of a remedy provided by the legislature, the courts of this state are free to impose a duty of good faith and fair dealing based in tort law.

Although *Cramer* involved section 155 of the Insurance Code (215 ILCS 5/155 (West 1994)), the opinion's rationale was not confined to that context. The court's description of the covenant of good faith and fair dealing as a rule of construction, rather than an independent source of tort liability, was not limited to the area of insurance law, and is as apt here as it is in other circumstances. Moreover, this court's analysis in *Cramer* made clear that, irrespective of a statutory remedy, the existence of a contractual remedy would have made the tort theory unnecessary. *Cramer*, 174 Ill. 2d at 526-27.

In *this* case, the plaintiff had recourse to both her specified remedies under the parties' contract *and* traditional tort remedies which she in fact sought to employ but failed to prove. A cause of action for violation of a duty of good faith and fair dealing would, as a practical matter, add little to this or any plaintiff's remedial repertoire. As the appellate court's own analysis of this issue suggests, the requisite evidence for plaintiff to prevail on the tort claims is less than that which the appellate court would have required for a showing that defendant violated a duty of good faith and fair dealing:

> "Defendant's conduct was intentional and outrageous. In the future, in order to state a claim for bad faith, a defendant's conduct would have to be similarly egregious and outrageous." 311 Ill. App. 3d at 656.

First, we do not agree that defendant intended to

create the credit controversy; nor do we believe the reporting of the dispute wrongful. Moreover, we do not believe it advisable to recognize a cause of action for violation of a duty of good faith and fair dealing in the factual context of this case; nor do we see a need to expand the reach of the limited cause of action acknowledged by *Cramer* in duty-to-settle cases. "It is plaintiff's burden, in urging this court to create new rights of action or expand existing ones, to persuade the court of the need for such new or expanded rights." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 39 (1994). We are not persuaded.

The defendant also challenges the appellate court's determinations that the plaintiff may recover for defamation and for tortious interference with prospective business expectations. The appellate court concluded that the defendant's actions in relating the impending foreclosure of the plaintiff's property to the credit reporting agencies were intentional and wrongful.

An underlying element common to both the defamation claim and the tortious interference claim, as pleaded by the plaintiff, is the assumption that the defendant wrongfully declared the plaintiff's mortgage to be delinquent for nonpayment of the higher amounts, because the defendant had initially failed to provide the plaintiff with an explanation for the monthly increase in her mortgage payments. In essence, the plaintiff maintained that the defendant could not increase the payments without first providing an explanation for the increase. Accordingly, the plaintiff believed that payment of less than was required by the new payment booklet did not constitute a delinquency and therefore could not provide grounds for an adverse report to the credit reporting agencies.

We do not agree with the premise of the plaintiff's argument that the defendant was required first to

provide an explanation for the increased payment. The defendant provided the necessary notice by sending a new payment booklet showing the increased amount of the monthly payments. That was all that the mortgage agreement required. It provided:

> "If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within thirty days after notice from Lender to Borrower requesting payment thereof."

The required notice in this case was given when the defendant sent the plaintiff the new payment booklet showing the increased amount of each payment. Although it certainly would have been helpful for the defendant to have given the borrower an explanation for the increase when the new payment booklet was sent, the defendant's failure to do so did not excuse the plaintiff's subsequent refusal to make the required payments—payments the plaintiff does not now contest, and conceded were required.

As the defendant correctly notes, falsity is an element of the plaintiff's defamation claim. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490 (1988). To recover on a claim of defamation, plaintiff must prove that the statement or publication was false. *Troman v. Wood*, 62 Ill. 2d 184, 198 (1975); *Wynne v. Loyola University*, 318 Ill. App. 3d 443, 451 (2000); *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 400 (1999). The plaintiff cannot, however, establish that the defendant's reports to the credit agencies were false. The reports stated simply and correctly, "Foreclosure proceeding started, Account last paid on 7/91." These reports were accurate: the plaintiff was delinquent in her mortgage. By that time, the plaintiff and her tenant had not made a full payment on the mortgage since the preceding July. Moreover, the defendant had taken steps within its own

organization to initiate the foreclosure process. Because the reports were accurate, the plaintiff's action for defamation must fail.

The plaintiff argues, however, that truth is an affirmative defense and that the defendant failed to plead it in a timely manner. As we have noted, decisions of this court have reached the opposite conclusion, characterizing falsity as an element of the defamation plaintiff's cause of action. See *Krasinski*, 124 Ill. 2d at 490; *Troman*, 62 Ill. 2d at 198. Even if truth were an affirmative defense, however, the defendant's assertion of it would be considered timely in the circumstances of this case. The plaintiff did not raise her defamation claim until she filed her written closing argument, a number of months after the conclusion of the trial. Therein, the plaintiff characterized the counts alleging the defendant's negligence in reporting the delinquency to the credit agencies as claims for defamation. The defendant had no earlier opportunity to formally raise the defense, though it has consistently argued that the report it made to the credit agencies was truthful and accurate. Given these circumstances, even *if* we were to adopt the plaintiff's pleading requirement, we would consider the defendant's assertion of the defense to be timely.

The appellate court also concluded that the plaintiff is entitled to recover on her claim of tortious interference with prospective business advantage. We believe that this theory, too, is unavailing.

The elements of this cause of action are well established:

"To state a cause of action for intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the

plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07 (1996).

We believe that the plaintiff's claim in this case founders on the third element, the requirement that she show an intentional and unjustified interference by the defendant. The interference alleged by the plaintiff in the present case involved the allegedly false reports the defendant made to the credit agencies. As we have stated, however, those reports were accurate and proper, and therefore they cannot represent an unjustified interference with the plaintiff's prospective business expectancy.

We note in passing that ignorance of the basis for the increase in payments, though perhaps an *initial* source of controversy between defendant and Golomb, does not appear to have *sustained* the dispute—a dispute, we might add, that defendant *repeatedly* offered to resolve if plaintiff would only bring the account current by payment of the *full* amount owed. The defendant's actions do not support the appellate court's conclusion that defendant set out to "force plaintiff into foreclosure." See 311 Ill. App. 3d at 656. The circuit court's determination that defendant's conduct was not *intentional* is certainly not against the manifest weight of the evidence.

Finally, we note that at oral argument the defendant asked this court to reinstate the circuit court judgment, which awarded the plaintiff $10,000 on her negligence claims. Apparently, the defendant no longer wishes to challenge the trial judge's findings on those counts, and we need not discuss them separately.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Du Page County is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.