In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3203

FRANCIS T. FOSTER,

*Plaintiff-Appellant*,

*v.*

PRINCIPAL LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-03066 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED SEPTEMBER 18, 2015 — DECIDED NOVEMBER 25, 2015

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Principal Life Insurance Company moved to dismiss Francis T. Foster's complaint for failure to state a claim. The district court dismissed the complaint but did so because the court concluded that Foster's claim against Principal was "derivative" of a related lawsuit that had already been settled. Although Foster's complaint was not a model of clarity, we conclude that it stated a claim that was not pre-

cluded by any other litigation. We therefore vacate the judg-
ment and remand for further proceedings.

## I.

In reviewing this dismissal, we accept all well-pleaded
factual allegations in the complaint and draw all reasonable
inferences from those facts in favor of Foster. *Richards v.
Kiernan*, 461 F.3d 880, 882 (7th Cir. 2006). We begin with the
cast of characters in the hopes of dispelling the confusion that
clouded matters in the district court. The Regional Transporta-
tion Authority ("RTA") runs six bus lines in northern Illinois
under its Pace Suburban Bus Division ("Pace"). Each Pace bus
line has its own pension and 401(k) retirement plan (the "Pace
Plans"). The RTA also has its own retirement plan, the "RTA
Plan." We will refer to the Pace Plans and the RTA Plan
collectively as the Plans. Each of the Plans is run by a commit-
tee composed of an equal number of union and management
representatives. The Pace Plans, which are considered private
trusts created for the benefit of the covered employees,
appointed Principal as the trustee. Principal held title to the
assets of the Pace Plans for the benefit of participants and their
beneficiaries. As trustee, Principal had a fiduciary duty to
follow the terms of the Pace Plan documents.

In 2003, each of the committees for the Pace Plans passed a
resolution retaining Foster to act as the lawyer representing the
interests of the Plans.[1] The committees instructed Principal to

---

[1] Foster had been representing the Plan committees since the 1980s. The
2003 resolutions were the most recent authorizations of his representation
(continued...)

pay Foster a fixed monthly fee from the jointly administered trust funds for the Pace Plans. This arrangement worked without incident for a number of years until January 2011. At that time, Foster notified Pace's Board of Directors ("Pace Board") that one of the Pace Plans was underfunded in violation of the Illinois Pension Code. Foster told the Pace Board that Pace was required to make additional contributions of $181,360 for 2009, and $235,190 for 2010. This was unwelcome news at Pace, and Pace management employees subsequently retaliated by attempting to terminate Foster's employment as lawyer for the Plan committees. But Pace management lacked authority to terminate Foster's employment. Only the Plan committees held the power to terminate Foster and they had not done so.

Foster sent a letter to Pace, informing the company that, under the Pace Plan documents, termination of his representation could be accomplished only by a vote of each of the governing committees of the Pace Plans. Pace responded by attempting to terminate both Foster's representation of the RTA Plan and his fee agreement with the RTA Plan. Pace also instructed Principal to stop paying Foster's monthly fees for services rendered to the Pace Plans after March 1, 2011. Although only the Pace Plan committees had the authority to order Principal to stop paying Foster, Principal, through its employee Darrell Washington, wrongfully complied with Pace's directive and stopped paying Foster. After the stop-payment order went into effect, Foster advised Washington

---

[1] (...continued)
from the committees at the time of these events.

that Pace's directive was an illegal and retaliatory act. He told Washington that only the Pace Plan committees had authority to stop his monthly payments, and that Pace's instructions were unauthorized, null and void. Washington would not identify the person at Pace who issued the directive to stop payments to Foster. He told Foster that Principal would follow the instructions and orders of only Pace and not the Pace Plan committees. Foster then provided to Principal signed statements from each of the Pace Plan union committee members affirming that they had not authorized the stop-payment on Foster's fees. Principal ignored these signed statements and continued to follow the instructions of the unnamed Pace employee rather than the Pace Plan committees.

Foster also sent a letter to the RTA, which has supervisory responsibilities over Pace, informing the RTA that Pace had violated various state and federal laws as a result of these actions. In this same letter, Foster informed the RTA that one of the Pace Plans was underfunded for 2009 and 2010. The executive director of the RTA, Joseph Costello, refused to take any action in response to Foster's letter. Instead, Foster asserted, Costello retaliated against Foster by inducing the RTA Plan committee to terminate Foster's representation of the RTA Plan.

This left Foster with a contractual obligation to represent the interests of the Pace Plans and no entity paying him to do so. For a period of time (seventeen months, Foster told us at oral argument), he continued to represent the Pace Plan committees without pay. In 2011, Foster filed suit against Pace and certain Pace employees based on these actions. The parties settled that suit with a confidential agreement, and the case

was dismissed in 2012. Six months later, Foster filed suit against RTA Executive Director Costello and Principal. Foster raised three claims against Costello and one count against Principal for tortious interference with prospective economic advantage. Both defendants moved to dismiss the complaint and the court granted the motion. Although Principal moved to dismiss on the grounds that Foster lacked standing to sue and that he failed to state a claim, the court granted Principal's motion on the theory that Foster's claims against Principal were "derivative" of his claims against Pace, and that his settlement with Pace barred his claim against Principal. Foster subsequently settled his claims with Costello and appeals only the judgment in favor of Principal. The district court also denied Foster's motion to amend his complaint, and Foster appeals that decision as well.

## II.

We review *de novo* the district court's decision to dismiss a claim pursuant to Rule 12(b)(6). *Vinson v. Vermilion County, Il.*, 776 F.3d 924, 928 (7th Cir. 2015); *Ball v. City of Indianapolis*, 760 F.3d 636, 642-43 (7th Cir. 2014). Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to set forth in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must state a claim that is plausible on its face. *Vinson*, 776 F.3d at 928; *Ball*, 760 F.3d at 643. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To state a claim under Illinois law for intentional interference with prospective economic advantage "'a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Voyles v. Sandia Mortgage Co.*, 751 N.E.2d 1126, 1133 (Ill. 2001) (quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996)). Foster's Amended Complaint adequately alleged each of those elements.

In Count IV of the complaint, titled "Tortious Interference with Prospective Economic Advantage and Attorney-Client Relationship," Foster alleged that he had an ongoing attorney-client relationship with the Pace Plan committees based on the 2003 resolutions of those committees. That relationship began in the 1980s and Foster reasonably expected his representation to continue until the Pace Plan committees voted to revoke the arrangement. Foster also alleged that Principal, as trustee for the Pace Plans, knew of the arrangement and had in fact been disbursing Foster's monthly fees on behalf of the Pace Plans at the direction of the Pace Plan committees. As trustee, Principal had a fiduciary duty to follow the terms of the Pace Plan documents, and those documents required the trustee to follow the directives of the Plan committees. Instead, Foster asserted, Principal "intentionally and improperly interfered with Foster's representation of the Pace Plans by implementing the unauthorized instructions of an unidentified Pace employee to stop paying Foster's monthly fees on behalf of the Pace Plans."

R. 23, ¶ 69. Principal persisted in this course of action even when Foster produced conclusive proof that the Pace Plan committees had not authorized the stop-payment order. These acts of interference, he alleged, resulted in the destruction of his longstanding attorney-client relationships with the Pace Plans and their committee members. That, in turn, caused him to lose income and to suffer damage to his professional reputation. Under the standards articulated in *Voyles*, these allegations adequately state a claim for tortious interference with prospective economic advantage under Illinois law.

The district court concluded that the claim was nevertheless barred by the settlement of Foster's suit against Pace. The court devoted the vast majority of its Memorandum Opinion and Order to resolving Foster's claims against Costello, and resolved the count against Principal summarily. We repeat the district court's analysis of Foster's claim against Principal in its entirety:

> Finally, the court concludes that Plaintiff's claim that Principal tortiously interfered with its prospective economic advantage and attorney-client relationship with the Plans is barred by resolution of the Pace litigation. The only wrongdoing that Plaintiff alleges Principal committed was "intentionally and improperly interfer[ing] with Foster's representation of the Pace Plans by implementing the unauthorized instructions of an unidentified Pace employee to stop paying Foster's monthly fees. …" (Am. Compl. ¶ 69) (emphasis added.) Pace's instruction to Principal to stop making monthly payments to Foster for his representation of the Pace Plans is a function of

> *Pace's* decision to terminate Foster's appointment as attorney for the Pace Plans. Thus, whether Principal's "implementat[ion]" of Pace's instructions was tortious depends on whether Pace's decision to terminate Foster amounted to retaliation. That issue was resolved in the Pace litigation, where Plaintiff alleged, among other claims, that Pace and its employees wrongfully terminated his representation of the Plans in retaliation for his report that Pace was in violation of Illinois law. Indeed, Foster alleged specifically in that earlier complaint that "Principal received instructions from Pace to stop paying Plaintiff's monthly fees." *See Foster v. Pace* Compl. ¶¶ 69-78, 96 (emphasis added). The Pace litigation was resolved by a confidential settlement agreement. Whatever the terms of that settlement may be, it put to rest claims against Pace, its employees, and the RTA. As Plaintiff's claim against Principal is derivative of its already litigated claims against Pace, Plaintiff cannot re-litigate Pace's liability here by suing Principal.

*Foster v. Costello*, 2014 WL 1876247, *11 (N.D. Ill. May 9, 2014) (emphasis in original).

As is apparent from this passage, the district court labored under the misimpression that Pace terminated Foster's representation of the Pace Plan committees. The court's error was understandable because, as we noted earlier, Foster's complaint was not a model of clarity. For example, Foster alleged in the Amended Complaint:

> Pace management was unhappy with Foster's demand that it comply with the [sic] section 22-103(c) and retaliated against him by unilaterally terminating his engagement as counsel to the Pace Plans in March 2011, disregarding the fact that the Plans are separate from Pace and no action can be taken without the participation and support of the union member(s) of the Pace Plans.

R. 23, ¶ 4. Although the first half of the sentence alleges that Pace unilaterally terminated Foster, the second half asserts that it could not take this action without the authorization of the union committee members. At other times, Foster more clearly characterized Pace's actions as *attempts* to terminate his representation of the Pace Plan committees. R. 23, at ¶¶ 22, 26. Reading the Amended Complaint as a whole, accepting Foster's allegations as true and drawing all reasonable inferences in his favor, it is apparent that he alleged that Pace repeatedly *attempted* to terminate him but lacked the legal authority to do so. Pace then wrongfully directed Principal to stop paying Foster, again without the legal authority to do so. And even though Pace lacked the legal authority to issue the stop-payment order, and even though Principal was legally bound to accept orders only from the Plan committees, Principal enacted Pace's unlawful directive and stopped paying Foster, an action that harmed Foster's attorney-client relationship with the Pace Plan committees. It is with that understanding of Foster's claims that we address the district court's determination that Foster's claim against Principal had been resolved by his prior litigation against Pace.

On appeal, Foster contends that his claim against Principal was not derivative of his earlier claims against Pace. He notes that the district court cited no legal doctrine underlying its finding that the claim was barred as "derivative," and so he postulates various legal bases on which the court might have relied, such as *res judicata* and collateral estoppel. Foster maintains, and we agree, that the requirements of *res judicata* and collateral estoppel cannot be met under the facts presented here. Indeed, Principal does not attempt to defend the district court's rationale that the claim was "derivative" and conceded at oral argument that neither *res judicata* nor collateral estoppel apply in these circumstances. Nor is there any indication that Principal was somehow released by the terms of Foster's confidential settlement agreement with Pace and Pace employees in the earlier litigation.

Foster also contends, and again we agree, that Principal's liability is not discharged under the Illinois Joint Tortfeasor Contribution Act ("Act"). *See* 740 ILCS 100/2. That statute provides:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

740 ILCS 100/2(c). This provision reversed the common law rule that a release of one joint tortfeasor served as a release of all. *Alsup v. Firestone Tire & Rubber Co.*, 461 N.E.2d 361, 363 (Ill. 1984). As the Illinois Supreme Court noted, the common law rule was uniformly criticized as harsh, very unfair, and without any rational basis. *Alsup*, 461 N.E.2d at 363-64. The statute was intended to reverse a rule that resulted in the unintended, perhaps unwitting, release of persons who were strangers to the release contract. The court therefore read the statute to mean that tortfeasors, other than the ones who bargained for the release, must be specifically identified in order to be released; a general release, even one written in the broadest possible terms, is ineffective unless a party is specifically named.

The provision also has the effect of preventing a double recovery. *See Thornton v. Garcini*, 928 N.E.2d 804, 813 (Ill. 2009). A non-settling party may not be required to pay more than its *pro rata* share of any shared liability. *Id*. Foster assured us at oral argument that he was not fully compensated for his losses in his settlement with Pace. The remaining amount of damages, if he is able to prove liability, will be an issue for the factfinder. Principal does not assert that it was specifically named in a release in the Pace litigation. Thus, Principal's liability is not discharged under the plain language of the Act. Principal's claim that the Act does not apply to intentional tortfeasors is belied both by the plain language of the Act and the Illinois Supreme Court's application of the provision in a case involv-

ing an intentional tortfeasor.[2] *Thornton*, 928 N.E.2d at 813-14. We therefore conclude that Foster has stated a claim for intentional interference with prospective economic advantage and that his claim is not precluded by his settlement with Pace and the Pace employees.

The final matter pending is the district court's denial of Foster's motion to amend his complaint. The district court denied that motion because of its earlier conclusion that the claim against Principal was derivative of the claims litigated against Pace and because nothing in the proposed amendments cured that perceived deficiency. Now that we have determined that the claim was not derivative, the court should consider anew Foster's motion to amend the complaint. For his part, now that he has settled his claims with Costello, Foster may wish to refile that motion in order to amend the complaint to remove the allegations related to Costello and to clarify his claim against Principal. The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

---

[2]   Principal's reliance on *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 540-42 (Ill. 1989), is misplaced. Principal asserts that the Illinois Supreme Court limited application of the Act to negligent tortfeasors, and that the common law rule remains in effect for intentional tortfeasors. Because Foster alleged an intentional tort against Principal, the company argues that it was released from liability by the settlement with Pace. But *Gerill* addressed only subsection (a) of the Act, whether intentional tortfeasors are entitled to contribution under the Act, and did not address subsection (c) related to releases. The *Gerill* court's reasoning was based on the legislative history of the contribution provision, none of which applies in the context of releases.