In the

# United States Court of Appeals
### For the Seventh Circuit

No. 12-3790

BRENT VINSON, Husband, and
BRANDY VINSON, Wife, Mother and
Next Friend of C.A.V. and C.R.V.,
Minors,

*Plaintiffs-Appellants*,

*v.*

VERMILION COUNTY, ILLINOIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:12-cv-02099-HAB-DGB— **Harold A. Baker**, *Judge*.

ARGUED OCTOBER 31, 2014 — DECIDED JANUARY 27, 2015

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

ROVNER, *Circuit Judge*. Brandy Vinson, her husband Brent,
and their two minor children, C.R.V. and C.A.V., sued several
law enforcement officers and two local governments for
conducting an illegal search of their home and attached garage

in violation of the Fourth Amendment. They also asserted a state law claim for trespass. The district court dismissed part of the complaint for failure to state a claim and granted judgment on the pleadings for the remainder. We reverse and remand.

## I.

We accept as true all the factual allegations in the complaint on review of a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). Brandy Vinson is the daughter of Ronald and Cindy Olson. On June 4, 2009, Detectives David Sherrick and Stuart Shaw[1] of the Champaign County Sheriff's Department executed a search warrant at the Olson home. The detectives were looking for a trailer and lawn mowers that had been reported stolen but they found nothing at the Olsons' home. Although they had no reason to believe that the Vinsons were involved in the purported theft, and they possessed no warrant for the Vinson property, they nevertheless contacted Deputy Sheriff Jerry Davis of the Vermilion County Sheriff's Department and asked him to meet them for a search of the Vinsons' home in that county.

At approximately 3:30 p.m. on June 4, 2009, the three plainclothes officers arrived in two unmarked cars at the Vinson home and pulled into the home's driveway. The

---

[1] We are using the corrected names of the defendants. The plaintiffs listed Detective Shaw's first name as "Tony" when it is in fact "Stuart." They also misspelled Sheriff Hartshorn's last name, omitting an "r."

Vinsons' fourteen-year-old daughter, C.A.V., was returning to the house after checking the mailbox when the cars pulled in near the home's attached garage. C.A.V. was home with her nine-year-old brother, C.R.V., at the time and was alarmed by the appearance of three strange men in two cars. She went into the house through the back door and locked the door. She checked to make sure that her brother was inside the house and then called her mother at work to report the appearance of the men. While she was speaking to her mother, who was then in a high risk pregnancy with her third child, C.A.V. saw one of the men peering through a window into the home. C.A.V. told her mother that one of the men was looking into the house through the window. This caused both mother and daughter great distress. The man, after staring through the window, told C.A.V. that he was a police officer and said "he had to conduct a search of the house." According to the complaint, "C.A.V. complied with the officer's statement, went upstairs with her brother and watched [the three officers] out the window while they searched the garage attached to the house and curtilage of the house." The officers found nothing and left the property.

The Vinsons sued Detective Sherrick and Officers Shaw and Davis in their individual capacities; Dan Walsh, the Sheriff of Champaign County, in his individual and official capacities; Patrick Hartshorn, the Sheriff of Vermilion County, in his individual and official capacities; and Champaign and Vermilion Counties, local governmental entities. The first count of the complaint alleged a Fourth Amendment claim against Sherrick, Shaw and Davis, under 42 U.S.C. § 1983. That count also named Champaign and Vermilion Counties as parties responsible for the payment of any judgment under the Illinois Local

Governmental and Governmental Employees Tort Immunity
Act, 745 ILCS 10/9-102 (hereafter "Tort Immunity Act"). The
second count alleged common law trespass against Sherrick,
Shaw and Davis, and sought to hold Walsh and Hartshorn
liable under common law *respondeat superior*. The trespass
claim again named the Counties as parties liable for any
damages under the Tort Immunity Act. The Vinsons sought
compensatory damages, punitive damages and attorneys' fees.

Originally, the Vinsons joined their claims with those of the
Olsons, who sued many of the same defendants for the search
of the Olson property and for the subsequent prosecution of
Ronald Olson. When the defendants moved to dismiss certain
claims in the original complaint filed jointly by the Olsons and
the Vinsons,[2] the district court commented that the complaint
was "vague and indefinite" in describing the search at the
Vinson residence and noted that there was no assertion of
forced entry. The court then concluded that the joinder of the
Olson and Vinson claims in the same complaint violated
Federal Rule of Civil Procedure 18(a) and that the claims

---

[2] In the original, jointly filed suit, the Vermilion County defendants and the
Champaign County defendants filed separate motions to dismiss. The
Vermilion County defendants specifically excluded from their motion to
dismiss the claims brought by the Vinsons for the illegal search of their
property. The Champaign County defendants likewise did not specifically
mention in their motion to dismiss the claims of the Vinsons. Ultimately,
the court did not dismiss the claims against the Vinsons but severed them,
as we discuss *infra*.

should have been brought in separate suits.[3] The court then held that the "Olson and Vinson claims are severed by the court for misjoinder under Fed. R. Civ. P. 18(a) and 21. Leave is granted the plaintiffs to file a second amended complaint within twenty-one days of this order correcting the deficiencies in the dismissed amended complaint. The Olson claims and the Vinson claims must be brought in separate suits[.]"

Within the time allotted by the district court, the Vinsons filed their separate complaint, bringing the claims we have just described. Walsh, Sherrick and Shaw then moved to dismiss the Vinsons' new complaint for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). In the alternative, they argued that the Vinsons' claims were now barred by the statute of limitations. The district court concluded that the Vinsons failed to state a claim under the standard set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court first repeated its previous criticism that the Vinsons' claims were vague and indefinite. Noting that the new complaint added only a few

---

[3] This conclusion was mistaken; there was nothing wrong with the original complaint. Rule 20(a) permits persons to "join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Such was the case here where, in a single day, two of the defendants conducted a purportedly unlawful search of the Olson home for stolen items, and then enlisted a third defendant to continue that search for those same items at the Vinson home. *See also Lee v. Cook County, Ill.*, 635 F.3d 969, 971 (7th Cir. 2011) ("Multiple plaintiffs are free to join their claims in a single suit when 'any question of law or fact common to all plaintiffs will arise in the action.'"). The Vinsons did not appeal that ruling and so we will not address it further.

insignificant details, the court found that the allegations were insufficient under *Iqbal* to state a claim. The court acknowledged the assertions that the officers peered through the windows and walked around the curtilage and into the back yard to look for "large items that would be readily apparent without the need to disturb small personal items." The court also noted that the officers searched the attached garage. But none of this was problematic, the court found, because C.A.V. "consented" to the officers' search. The court based this conclusion on the allegation that, after an officer told C.A.V. that he had to search the house, she "complied with the officer's statement." Turning to the dictionary definition of "comply," the court found that it meant to conform, submit or adapt as requested:

> Therefore, on its face, this complaint alleges that C.A.V. essentially consented to the defendants' search of the curtilage and garage to locate a stolen lawn mower and trailers (*i.e.*, large, obvious items) that might be found on the premises.

*Vinson v. Champaign County, Ill.*, No 12-2099 (C.D. Ill. Aug. 10, 2012), Order at 3-4. That allegation of "consent," the court held, required dismissal of the complaint under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The court then concluded that the common law trespass claim must be dismissed because it failed to allege wilful and wanton conduct, as required under Illinois law. Moreover, because the claim against Walsh depended on the validity of the trespass claim against Sherrick and Shaw, the court dismissed the claim against Walsh. Finally, even though Champaign County had not joined the motion to dismiss, the court concluded that dismissal of the claims

against Sherrick and Shaw required dismissal of the County. The court declined to reach the statute of limitations issue.

Davis, Hartshorn and Vermilion County then separately moved for judgment on the pleadings. The district court granted the motion. The court first noted that Hartshorn and Vermilion County were entitled to judgment because there is no *respondeat superior* liability for section 1983 claims, and because the plaintiffs failed to plead a *Monell* claim against the County.[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). As for Davis, the court concluded again that there could be no claim for an unlawful search against the law enforcement officers present that day because C.A.V. "consented" to the search. The plaintiffs appeal.

---

[4] The court's mention of *Monell* in this context is puzzling. *Monell* was irrelevant to the theory on which the Vinsons sought to hold the Counties and the elected Sheriffs liable. Their claims against the Counties and Sheriffs were essentially claims for indemnification under state law. *See* 745 ILCS 10/9-102. And their *respondeat superior* claim against the Counties' elected Sheriffs, Hartshorn and Walsh, was limited to their state law trespass count. There is no mention of either Hartshorn or Walsh in the section 1983 count. *See Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 636 (7th Cir. 2009) (concluding that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer and because state law requires the county to pay, federal law deems it an indispensable party to the litigation). Had the Vinsons sought *respondeat superior* liability against the Sheriffs in their section 1983 claim, the court would have been correct that *Monell* and a host of later cases firmly establish that there is no *respondeat superior* liability under section 1983. *See Monell*, 436 U.S. at 694–95; *Askew*, 568 F.3d at 636. In any case, the Vinsons do not appeal the judgment on the trespass claim and so the elected Sheriffs are no longer part of the suit. We address *infra* the indemnification claim against the Counties.

**II.**

We review *de novo* the district court's decisions to dismiss claims pursuant to Rule 12(b)(6) and to enter judgment on the pleadings pursuant to Rule 12(c). *Ball v. City of Indianapolis*, 760 F.3d 636, 642–43 (7th Cir. 2014). A dismissal under Rule 12(b)(6) and judgment on the pleadings under Rule 12(c) both employ the same standard: the complaint must state a claim that is plausible on its face. *Ball*, 760 F.3d at 643; *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir.), *cert. denied*, 135 S. Ct. 286 (2014). *See also Twombly*, 550 U.S. at 570. Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to set forth in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (internal citations omitted). On appeal, the Vinsons argue that the complaint adequately states a Fourth Amendment claim for the warrantless search of the home's curtilage and garage by Sherrick, Shaw and Davis.[5]

There is no dispute that the areas searched by the officers here were in fact protected by the Fourth Amendment. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013).

---

[5] The Vinsons made no arguments related to the district court's dismissal of their state law claims for trespass and so we will not address the appropriateness of that dismissal. Because Sheriffs Walsh and Hartshorn are named only in the trespass claim, no claims against them remain on remand.

> [W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window. We therefore regard the area "immediately surrounding and associated with the home"—what our cases call the curtilage—as "part of the home itself for Fourth Amendment purposes."

*Jardines*, 133 S. Ct. at 1414 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The Vinsons' attached garage and the areas immediately surrounding their home and garage fit comfortably within the scope of the Fourth Amendment's protections of the home.

Under the Fourth Amendment, "a search conducted without a warrant issued upon probable cause is '*per se* unreasonable … subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *United States v. Borostowski*, 2014 WL 7399074, *11, — F.3d — (7th Cir. 2014). One of the exceptions to the warrant requirement is consent to search. *Schneckloth*, 389 U.S. at 219

("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Davis v. United States*, 328 U.S. 582, 593–94 (1946).

The district court interpreted the Vinsons' complaint as conceding the issue of consent to search. In general, a plaintiff may plead herself out of court when she includes in her complaint facts that establish an impenetrable defense to her claims. *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 941–42 (7th Cir. 2012); *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). But there was no concession of consent here. The district court mistakenly concluded that the Vinsons had pled themselves out of court in this case when they alleged that C.A.V. "complied" with the officer's statement that he "had to" search the house. The court's conclusion that C.A.V.'s compliance constituted "consent" cannot be squared with the facts or the law.

First, the complaint did not allege that the officers asked for consent to search. It asserted that the officer, after staring at the child through a window, told C.A.V. that he "had to" search the home. This was not a request for consent; it was a statement describing what the officer was about to do. Indeed, by staring through the window into the home while standing on the home's curtilage, the officer may have overstepped the bounds of the Fourth Amendment before even issuing this statement. *See Jardines*, 133 S. Ct. at 1415 (noting that while law enforcement officers need not shield their eyes when passing by a home on the public thoroughfare, an officer's leave to gather information is sharply circumscribed when he steps off

those thoroughfares and enters the Fourth Amendment's protected areas). That the child then went upstairs to be with her brother could not reasonably be interpreted as consent to search her parents' home and garage. Not only had there been no express or implied request for consent, on the facts alleged here, the child said and did nothing to indicate consent, and her failure to object to a police officer's directive cannot reasonably be construed as consent. In fact, upon first seeing the men approach the house, C.A.V. ran inside and locked the door, hardly the actions of a person consenting to a search of the home. Although it is sufficient at this stage of the proceedings to find that there were no allegations establishing consent (much less allegations establishing consent as a matter of law), we also doubt that C.A.V. possessed actual or apparent authority to allow a search of her parents' home. *Georgia v. Randolph*, 547 U.S. 103, 112 (2006). In *Randolph*, the Court noted that "'a child of eight might well be considered to have the power to consent to the police crossing the threshold into that part of the house where any caller, such as a pollster or salesman, might well be admitted,' 4 LaFave § 8.4(c), at 207 (4th ed. 2004), but no one would reasonably expect such a child to be in a position to authorize anyone to rummage through his parents' bedroom." Similarly, no one would reasonably expect that a child would be in a position to authorize police officers to search the perimeter of her parents' house and the inside of the family's attached garage for stolen goods. Taking the allegations of the complaint as true, the officers here conducted a warrantless search of protected areas of the home and garage without consent. There is nothing implausible about such a claim and nothing more need be alleged to state a claim for a

violation of the Fourth Amendment under section 1983. The Fourth Amendment claims against Sherrick, Shaw and Davis must therefore be reinstated. The Fourth Amendment claims against Champaign and Vermilion Counties under the Tort Immunity Act, 745 ILCS 10/9-102, must also be reinstated, as the defendants have conceded that the validity of those claims is dependent on the validity of the Fourth Amendment claims. *See also Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) (plaintiff need not wait for final judgment against government entity before proceeding under section 745 ILCS 10/9-102 but may seek a declaration of the government's liability in its initial complaint).

We pause to address some of the defendants' other arguments. On multiple occasions, the defendants protest that the officers were looking for large items, and that there was no need to disturb small personal items in order to search for these large items. The size of the items is entirely irrelevant, though, if the officers were in areas where they were not authorized to be when they conducted their search. Certainly, if the officers were standing on the public way or at the front door and the objects sought were in plain sight, there would be no unlawful search. But that is not what the plaintiffs alleged; they asserted that the officers entered areas of the home that they were not authorized to enter, including the curtilage and the inside of an attached garage. Both of these areas, as we noted earlier, are well within the protections of the Fourth Amendment. The defendants also fault the plaintiffs for not describing the window through which the officer peered when he told C.A.V. that he "had to" conduct a search. Neither Rule 8 nor *Iqbal* require that level of detail in a complaint. A

fair reading of the complaint is that the officers approached the house not through the usual path of a visitor, *e.g.* by approaching the front door and knocking, but by driving up to the attached garage on the private driveway and walking through the curtilage before peering through a window. This is the kind of behavior for which the average citizen might call the police, not the kind of behavior one would expect from the police. *See Jardines*, 133 S. Ct. at 1416 (noting that to find a visitor knocking on the door is routine but to spot that same visitor exploring the front path with a metal detector before asking permission would inspire many people to call the police, because "the background social norms that invite a visitor to the front door do not invite him there to conduct a search."). Most parents would want their fourteen-year-old daughters to call the police if an unknown man approached the house and stared at the teen through a window. No one needs a description of that window to know that something is terribly amiss in that behavior. The defendants also complain that there was no forced entry and nothing was seized. But of course neither of these factors are necessary to sustain a Fourth Amendment claim for an improper search.

All that remains is the defendants' argument in the alternative that the Vinsons' separate complaint was filed outside the statue of limitations. Had the district court mistakenly dismissed the Vinsons' claims rather than severed them from those of the Olsons', that argument might have some viability. *See Lee*, 635 F.3d at 971. But the court severed the Vinsons' claims, and "When a federal civil action is severed, it is not dismissed. Instead, the clerk of court creates multiple docket numbers for the action already on file, and the severed claims

proceed as if suits had been filed separately." *Lee*, 635 F.3d at 971. The defendants do not dispute that the original action was timely filed. They claim only that the Vinsons' newly filed complaint after the severance was not within the statute of limitations. But the severance simply resulted in their claims proceeding as if filed separately in the first place. The original filing date therefore applies and there is no statute of limitations problem with the Vinsons' amended complaint.

In sum, the dismissal of the Fourth Amendment claims against Sherrick, Shaw and Davis, as well as the associated state law indemnification claims against Champaign and Vermilion Counties are reversed and remanded. Because the Vinsons have proffered no argument regarding the dismissal of the trespass action, we decline to address it.

REVERSED AND REMANDED.