# Illinois Official Reports

## Appellate Court

---

### *Fiala v. Bickford Senior Living Group, LLC*,
### 2015 IL App (2d) 150067

---

| | |
|---|---|
| Appellate Court Caption | EDWARD M. FIALA, JR., Plaintiff-Appellant, v. BICKFORD SENIOR LIVING GROUP, LLC, and ANNA MEDICAL CLINIC, S.C., d/b/a Amber Medical Clinic, Defendants (Rabia Naveed, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-15-0067 |
| Filed | November 19, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-L-635; the Hon. James R. Murphy, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jeffrey S. Deutschman and Bradley A. Skafish, both of Deutschman & Associates, P.C., of Chicago, for appellant.<br><br>Robert L. Larsen, of Cunningham, Meyer & Vedrine, P.C., of Warrenville, and Michael R. Slovis, of Cunningham, Meyer & Vedrine, P.C., of Chicago, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices McLaren and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Edward M. Fiala, Jr., appeals the judgment of the circuit court of Kane County, dismissing his medical battery and civil conspiracy claims against defendant Dr. Rabia Naveed and striking his request for punitive damages. Plaintiff argues that he was not required to file a health care professional's report pursuant to section 2-622(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-622(a)(1) (West 2014)), because section 2-622 does not apply to a medical battery claim based on a complete lack of consent; that his request for punitive damages did not run afoul of section 2-604.1 of the Code (735 ILCS 5/2-604.1 (West 2014)), because that section applies only to negligence and product liability claims and not to claims of intentional torts; and that he stated a claim for civil conspiracy sufficient to survive a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). We reverse and remand.

¶ 2                              I. BACKGROUND

¶ 3    This matter comes before us for a second time. In our first contact with this case, defendant Bickford Senior Living Group, LLC, appealed the judgment of the trial court denying its petition to compel arbitration. We reversed, holding that the arbitration clause in plaintiff's contract with Bickford was enforceable. *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160. Bickford is not a party to this appeal.

¶ 4    As pertains to this appeal, on June 3, 2014, plaintiff filed an amended complaint adding defendant as a party. Plaintiff raised two claims against defendant: count XI for medical battery and count XII (misnumbered as count IX) for civil conspiracy. On July 10, 2014, defendant filed a motion to dismiss the two counts and to strike the request for punitive damages. On September 10, 2014, the trial court granted defendant's motion to dismiss the two counts. The trial court also granted without prejudice the motion to strike the request for punitive damages. Plaintiff filed a motion to clarify the September 10, 2014, order, and, on September 24, 2014, the trial court entered an order stating that the dismissal of the two counts was without prejudice and setting a deadline by which plaintiff was to file a second amended complaint.

¶ 5    On October 16, 2014, plaintiff filed his second amended complaint, in which count IX alleged medical battery and requested punitive damages against defendant and count X alleged civil conspiracy against defendant. We summarize the pertinent allegations from the second amended complaint.

¶ 6    From October 2012 to August 2013, plaintiff resided at Bickford's long-term care facility in St. Charles. When plaintiff was admitted to the facility, he was confined to a wheelchair and was diagnosed with Lewy body dementia, a progressively debilitating illness similar to Parkinson's disease and potentially also affecting his cognition. Plaintiff resided at the Bickford facility with his wife, Sue. Plaintiff's son and daughter held medical powers of attorney for plaintiff's care. Plaintiff's medical chart, maintained by Bickford, indicated that his children held the medical powers of attorney and that no medications were to be given to plaintiff without prior consent. In particular, the use of the medication Paxil was prohibited.

¶ 7        Because of plaintiff's physical infirmities, he required assistance from the nursing staff, including multiple visits to the bathroom during the night. At least some, and perhaps a sizable number, of the staff members viewed plaintiff as a burdensome patient because of the effort involved in assisting him. At some point, staff members began taking plaintiff to "Mary B's" area, a separate area within the Bickford facility. Over the course of his stay at the Bickford facility, plaintiff would be left in Mary B's area overnight. This conduct separated plaintiff from his wife, and neither plaintiff nor his wife wished for plaintiff to spend time in Mary B's area.

¶ 8        When plaintiff was taken to Mary B's area, he would be medicated with Paxil or other, unknown, medications. Sometimes when plaintiff was not in Mary B's area, he would also be given medications, including Paxil. The drugs were given to plaintiff without prior consent; in particular, Paxil was administered despite the prohibition against its use as documented in his medical chart. Generally, the drugs given to plaintiff without prior consent would render him catatonic; sometimes, though, they would cause him to become agitated and violent. Plaintiff grew to believe that the unknown drugs and the Paxil were used on him as a form of "chemical restraint," to make it easier for Bickford's staff to deal with him. Plaintiff neither used the drugs nor had them prescribed for him before his stay at the Bickford facility.

¶ 9        Defendant prescribed the drugs used on plaintiff at the Bickford facility, and he prescribed them for use at night. Plaintiff had not met or consulted with defendant at any time before, during, or after his stay at the Bickford facility. Indeed, defendant was never one of plaintiff's treating physicians. Moreover, neither plaintiff's wife nor his children were given the opportunity to discuss or consult with defendant regarding the prescriptions. Likewise, none of plaintiff's treating physicians was consulted about the prescriptions. Plaintiff further alleged that the use of Paxil and the other drugs diminished the quality of his life and caused him emotional and physical problems.

¶ 10       Regarding medical battery, plaintiff specifically alleged that he consented to neither the prescription nor the administration of the various medications. Likewise, plaintiff's authorized representatives did not consent to the prescription or administration of the medications. The prescription and, particularly, the administration of the medications were contrary to the expressed desires of plaintiff and his authorized representatives; plaintiff's medical chart clearly indicated that the administration of any medication required the prior consent of plaintiff or his authorized representatives. Plaintiff alleged that defendant's conduct in prescribing the medications and the resultant administration of the medications, in light of the lack of consent, constituted an unwanted touching of plaintiff's person.

¶ 11       Regarding civil conspiracy, plaintiff specifically alleged that defendant formed an agreement with Bickford to prescribe and administer Paxil and other medications for the purpose of chemically restraining plaintiff. Plaintiff alleged that the agreement was formed when Bickford asked defendant to prescribe psychotropic drugs for plaintiff. Defendant had never seen plaintiff professionally, and the prescription of Paxil and other medications violated plaintiff's express wishes as indicated in his medical chart. Defendant knowingly had the prescriptions filled and caused the medications to be delivered to the Bickford facility.

¶ 12       Plaintiff alleged that the prescription and the administration of the medications were done without authorization and without the documented need for chemical restraints. This conduct also took place without notice to plaintiff or to his authorized representatives, against

- 3 -

plaintiff's express instructions and wishes as contained in his medical chart, and without regard to either plaintiff's well being or whether the medications constituted the least restrictive means to accomplish the goal, presumably of restraining plaintiff; further, it constituted unlawful conduct because it violated the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2014)).

¶ 13 Plaintiff alleged that the overt acts in furtherance of the scheme to restrain plaintiff through medication included requesting prescriptions for Paxil and the other drugs, approving the prescriptions, writing or otherwise creating the prescriptions, sending the prescriptions to a pharmacy, picking up the medications, bringing the medications on-site, administering the medications to plaintiff, and moving plaintiff to a secluded area where the administration of the medications and their effects on plaintiff would not be witnessed. Plaintiff also alleged that he was harmed by the medications both emotionally and physically and that the medications put him at risk of future decline.

¶ 14 Defendant moved to dismiss the counts against him in the second amended complaint and to strike the request for punitive damages. Regarding the medical battery claim, defendant sought dismissal pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), arguing that plaintiff had not filed the required health-professional's report pursuant to section 2-622 of the Code (735 ILCS 5/2-622 (West 2014)). Likewise, defendant argued that the request for punitive damages was improper under section 2-604.1 of the Code (735 ILCS 5/2-604.1 (West 2014)), which requires leave from the trial court following a hearing on the propriety of punitive damages. Finally, regarding the civil conspiracy claim, defendant sought dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), arguing that plaintiff had not stated a claim for civil conspiracy.

¶ 15 On January 8, 2015, the trial court granted defendant's motion, dismissing both counts with prejudice and striking plaintiff's request for punitive damages. The trial court also included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Plaintiff timely appeals.

¶ 16 II. ANALYSIS

¶ 17 On appeal, plaintiff challenges the trial court's judgment dismissing his claims against defendant and striking his request for punitive damages. First, plaintiff argues that section 2-622 does not apply to a medical battery claim that is not based on healing art malpractice. Next, plaintiff argues that section 2-604.1 does not apply to an intentional tort such as medical battery. Last, plaintiff argues that he sufficiently pleaded a cause of action for civil conspiracy. We consider each argument in turn.

¶ 18 A. Medical Battery (Count IX)

¶ 19 Plaintiff appeals the dismissal of the medical battery count under section 2-619 of the Code. A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative matter outside of the complaint that avoids the effect of or defeats the claim. *Concord Air, Inc. v. Malarz*, 2015 IL App (2d) 140639, ¶ 20. We review *de novo* a trial court's dismissal of a claim pursuant to section 2-619. *Id.* We note that defendant advocates for the abuse-of-discretion standard, because the dismissal of plaintiff's claim was with prejudice, citing to *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr., & Co.*, 349 Ill. App.

3d 178, 195 (2004). Defendant blatantly misapprehends the standards of review set forth in *Muirfield Village*. There, we held that a dismissal (albeit pursuant to section 2-615) was subject to *de novo* review (*id.* at 188), whereas only the decision whether to make the dismissal with prejudice was reviewed for an abuse of discretion (*id.* at 195).

¶ 20　　Plaintiff alleged a medical battery claim against defendant. A battery is the unauthorized touching of the person of another. *Curtis v. Jaskey*, 326 Ill. App. 3d 90, 93 (2001) (citing *Gaskin v. Goldwasser*, 166 Ill. App. 3d 996, 1011-12 (1988)). Battery is an intentional tort. *Bakes v. St. Alexius Medical Center*, 2011 IL App (1st) 101646, ¶ 21. The cases indicate that the element of intent is defined in at least two ways: either an intent to touch or an intent to harm or offend by the touch. *Id.* In medical battery, hostile intent on the part of the defendant need not be established; rather, the gravamen of the medical battery focuses on the plaintiff's consent. *Curtis*, 326 Ill. App. 3d at 94. Thus, in a medical battery case, the plaintiff may recover by establishing "a total lack of consent to the procedure performed, that the treatment was contrary to the patient's will, or that the treatment was at substantial variance with the consent granted." *Id.*

¶ 21　　Defendant concedes that plaintiff stated a claim for medical battery, but he asserts that the claim is defeated or avoided by an affirmative matter outside of the four corners of the complaint. *Concord Air*, 2015 IL App (2d) 140639, ¶ 20. Defendant argues that plaintiff's failure to file a report pursuant to section 2-622 is the affirmative matter defeating plaintiff's claim. 735 ILCS 5/2-622(g) (West 2014) (the "failure to file a certificate required by this Section shall be grounds for dismissal under Section 2-619").

¶ 22　　Section 2-622 requires the plaintiff to file with the complaint an affidavit of merit that states that the affiant has consulted with a health professional who, after reviewing the medical records and other relevant material, has determined in a written report that there is a reasonable and meritorious cause for filing the action. 735 ILCS 5/2-622(a)(1) (West 2014). The plaintiff is to attach a copy of the report to the affidavit, and the medical report must identify the plaintiff and the reasons why the professional believes there to be a reasonable and meritorious cause of action. *Id.* Finally, the affidavit and the report are required "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries *** by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2-622(a) (West 2014).[1]

¶ 23　　Defendant argues that a medical battery claim based on lack of informed consent is subsumed within the universe of medical malpractice claims. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 18. Medical malpractice claims require section 2-622 reports, and this requirement can extend to a medical battery claim based on lack of consent. See *id.* ¶¶ 18-28. Defendant contends that we should inquire not whether plaintiff has pleaded a claim for medical battery but whether the type of medical battery alleged requires a section 2-622 report. Defendant answers this question affirmatively: plaintiff's allegations deal with medical diagnoses and treatment beyond the ken of the average juror.

---

[1]To be clear, a reading of section 2-622(a) reveals that it is implicated only where the action is for damages caused by medical malpractice, hospital malpractice, or other healing art malpractice. Thus, section 2-622 applies to the determination of liability, but the issue of damages is separate and not subject to the section's requirements.

¶ 24    Plaintiff, by contrast, argues that this case involves medical battery due to the administration of medications without any consent whatsoever. The issues, according to plaintiff, are whether plaintiff or his representatives gave consent to the administration of any of the medications and whether the medications were administered. These issues do not involve conduct beyond the ken of the average juror.

¶ 25    We begin with a closer look at *McDonald*. In *McDonald*, this court first noted that a claim that a health professional acted without informed consent is a type of medical malpractice claim. *McDonald*, 2014 IL App (2d) 130401, ¶ 18. We recognized that a patient has the rights to withhold consent and to refuse even lifesaving treatment, as well as the fact that an unauthorized touching of another (*i.e.*, without consent) is a common-law battery, and we recognized that all of these arise within the medical treatment context. *Id.*

¶ 26    We next observed that at the intersection of these medical malpractice principles stood the tort of medical battery. *Id.* ¶ 19. In order to state a viable claim, the injured party had to establish that (1) there was no consent to the medical treatment performed, (2) the medical treatment performed was against the injured party's will, or (3) the medical treatment performed varied substantially from the consent actually granted. *Id*. Under any of these circumstances, a battery has occurred, because the person administering the medical treatment touched the person of another without authorization. *Id.* The lack of consent to the medical treatment is the focus, not the intent of the person administering the medical treatment; further, the law maintains a distinction between a total lack of consent (battery) and a lack of informed consent (negligence). *Id.* ¶ 20.

¶ 27    We then discussed the applicability of section 2-622 to a medical battery claim, relying on the analysis in *Holzrichter v. Yorath*, 2013 IL App (1st) 110287. *Holzrichter* explained that, generally, "expert testimony is required to support a medical malpractice claim because the assessment of the alleged negligence may require knowledge, skill or training in a technical area outside the comprehension of laypersons." *Id*. ¶ 93. Further, the section 2-622 report is necessary where the subject matter is sufficiently complicated so as to be beyond the understanding of a normal juror, and this requirement is not limited to medical malpractice claims. *Id. Holzrichter* pointed to two cases, one styled as ordinary negligence (*id.* ¶ 94)–*Schindel v. Albany Medical Corp.*, 252 Ill. App. 3d 389 (1993), in which the resolution of the issues required expert medical testimony to define the standard of care notwithstanding the plaintiff's characterization of the issues as ordinary negligence–and one as breach of contract (*Holzrichter*, 2013 IL App (1st) 110287, ¶ 95)–*Bloom v. Guth*, 164 Ill. App. 3d 475 (1987), in which a section 2-622 report was required because the plaintiff's allegations that the defendant failed to properly perform medical procedures, while styled as a breach-of-contract claim, nevertheless described conduct well within the plain and ordinary meaning of healing art malpractice–to support its determination that a medical battery claim could require compliance with section 2-622 if the alleged conduct involved questions about the medical standard of care or issues that were otherwise so complicated that laypersons would not be able to assess it without expert testimony. *Holzrichter*, 2013 IL App (1st) 110287, ¶ 96.

¶ 28    In *McDonald* we noted that, while *Holzrichter* limited itself to its specific facts, it nevertheless stood for the broader principle that section 2-622 can apply to claims other than for medical malpractice, depending on whether the conduct is beyond the ken of a layperson and requires a medical expert's opinion to help the jurors understand. *McDonald*, 2014 IL

- 6 -

App (2d) 130401, ¶¶ 24, 27. Specifically, in *McDonald*, the plaintiff alleged that the defendants committed a medical battery against her, but her claims turned on whether the defendants' conduct exceeded the parameters of the surgery to which the plaintiff consented. We held that this presented an issue "beyond the ken of a layperson," requiring expert testimony about whether the use of certain implements was within the scope of the medical procedure performed. *Id.* ¶ 27. We also concluded that the purpose of section 2-622 buttressed our holding: "Requiring compliance with section 2-622(a) of the Code under these facts follows logically from the legislature's intent to prevent frivolous lawsuits and ensure that meritorious claims, bolstered by expert medical opinion, proceed past the pleading stage." *Id.* ¶ 28. *McDonald* further cautioned that a " 'plaintiff challenging an implicit part of the medical treatment should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical malpractice.' " *Id.* (quoting *Holzrichter*, 2013 IL App (1st) 110287, ¶ 88).

¶ 29    *McDonald* thus teaches that a court will look beyond a party's characterization of the claim and will examine the underlying allegations or facts to determine whether they raise issues requiring expertise to aid in the understanding of matters beyond the ken of laypersons. With these principles in mind, we turn to plaintiff's allegations.

¶ 30    Plaintiff alleged medical battery. Defendant conceded, by moving to dismiss pursuant to section 2-619, that plaintiff stated a claim for medical battery, but defendant argued that the claim was defeated because the allegations involved matters beyond the ken of laypersons and required the report of a health professional pursuant to section 2-622. Plaintiff alleged that both the prescription and the administration of Paxil and the other medications occurred with a complete lack of consent. In the allegations common to all claims, plaintiff alleged that he refused to be given any medications "without prior consent." Plaintiff alleged that this was reflected in his medical chart. Plaintiff alleged further that his medical chart forbade the administration of Paxil in particular. Plaintiff alleged that he was given medications, including Paxil, when he was in Mary B's area and even when he was not in Mary B's area. Plaintiff alleged that all of the medications were administered without the consultation or prior consent of himself, his authorized representatives, or his wife.

¶ 31    In count IX, plaintiff alleged specifically that defendant prescribed Paxil and other medications without ever seeing or consulting with plaintiff, his authorized representatives, or his wife. Further, "the prescription and resulting administration of the above-mentioned medication to Plaintiff occurred with a complete lack of consent by plaintiff or his authorized representatives to any treatment whatsoever by [defendant]." Additionally, defendant's prescribing and the resulting administering of the medications "occurred contrary to the stated will of the Plaintiff and his authorized representatives in that his medical chart required prior consent for such action."

¶ 32    Taking the factual allegations as true, as we must, we believe that plaintiff has successfully pleaded a complete lack of consent to the administration of the medications. *McDonald* states that, "[i]n a medical battery case, an injured party can recover [for medical battery] by establishing that (1) there was no consent to the medical treatment performed." *McDonald*, 2014 IL App (2d) 130401, ¶ 19. Plaintiff has alleged that he preemptively refused all medications unless he or his authorized representatives were specifically consulted about each and any proposed medication and that this prior refusal was indicated in his medical chart, kept by Bickford. Notwithstanding this blanket refusal, plaintiff was routinely

administered medications, including Paxil, about which he had not been consulted and to which he had not consented. Likewise, his representatives also were not consulted about the medications and they did not give consent on plaintiff's behalf to the administration of the medications.

¶ 33    These allegations are similar to those in *Gragg v. Calandra*, 297 Ill. App. 3d 639, 645 (1998). There, the plaintiff[2] did not consent to an operation and the subsequent life-sustaining treatment, which were contrary to the plaintiff's living will and his family's express wishes. The court held that, "[B]y stating that surgery and treatment were performed without consent, plaintiff has stated a claim for medical battery." *Id.* The court further held that, because it was clear that the plaintiff did not allege any deviation from the appropriate medical standards, the claim was not based upon medical or other healing arts malpractice and was thus not subject to the requirements of section 2-622. *Id.* at 645-46. Likewise here. Plaintiff alleged that he refused the administration of all medication without his or his representatives' prior consent, thereby pleading medical battery. Plaintiff did not allege that any incorrect or inappropriate medication was prescribed and administered, so we do not see any basis for the application of the requirements of section 2-622. *Id.*

¶ 34    We also note that, in *McDonald*, although the plaintiff pleaded claims of medical battery, those claims did not allege a lack of consent but instead alleged that the treatment substantially deviated from the consent granted. *McDonald*, 2014 IL App (2d) 130401, ¶ 21. We held that this type of allegation sounds more in medical or other healing arts malpractice and requires the input of a medical expert to opine whether the treatment as performed was within the scope of the treatment consented to. *Id.* ¶ 27. In our case, by contrast, plaintiff did not allege that he consented to the administration of a certain drug but was given a different drug that provided similar effects. Instead, plaintiff alleged a complete lack of consent. Accordingly, *McDonald*, while useful to understanding contours of the law in this area, is factually distinguishable from this case and cannot guide our result.

¶ 35    Likewise, *Holzrichter* is similarly distinguishable. There, the plaintiff alleged that the treatment he actually received deviated from the procedure to which he consented. *Holzrichter*, 2013 IL App (1st) 110287, ¶ 98. The court held that the plaintiff had to comply with the requirements of section 2-622 because the plaintiff's allegations involved the proper medical standard of care. *Id.* ¶ 100. Here, plaintiff did not allege that, although his medical condition required the administration of certain medications, defendant administered different medications. Rather, plaintiff alleged only that he did not consent to the administration of any medications for any reason unless he or his authorized representatives gave prior consent to it. By alleging a lack of consent rather than a deviation from consent given, plaintiff remains outside of the requirements of section 2-622. Accordingly, we hold that the trial court erred in dismissing count IX. We now turn to defendant's specific contentions regarding count IX.

¶ 36    Defendant first argues that "a claim that a health professional acted without the informed consent of the patient is a type of malpractice claim," citing *McDonald*, 2014 IL App (2d) 130401, ¶ 18. While this is a correct statement of law, it mischaracterizes plaintiff's allegations. As we have discussed, plaintiff did not plead a lack of informed consent, but

---

[2]In *Gragg*, the plaintiff of record was the administrator of the estate of the daughter of the person who received the medical treatment. For ease, we will simply refer to that person as "the plaintiff."

pleaded instead a complete lack of consent. This is key, because the cases distinguish between a lack of consent for the contested act (generally battery) and a lack of informed consent for the contested act (negligence). *Doe v. Noe*, 293 Ill. App. 3d 1099, 1113 (1997). Accordingly, we reject defendant's initial premise, that plaintiff was attempting to plead a sort of negligence claim.

¶ 37 Defendant's syllogism proceeds from the initial premise that plaintiff was pleading a claim sounding in negligence to the contention that "[e]verything about the case at bar deals with medical diagnosis and treatment beyond the ken of the average juror." We disagree. Defendant argues that, because plaintiff alleged that he "suffered from conditions including Lewy Body Dementia, a debilitating illness similar to Parkinson's Disease"; that his authorized representatives had the authority "to make medical decisions on behalf of Plaintiff"; and that defendant "authorized a prescription for Paxil and/or other medications," this case involves "medical diagnosis and treatment." This argument does not scan.

¶ 38 Plaintiff alleged that he refused consent to any medication unless he or his authorized representatives had given prior consent to that particular medication. Plaintiff did not allege that he was given the wrong medications or that the medications had an unintended effect; he alleged only that he was administered medications without his consent. None of plaintiff's allegations implicated the treatment the medications were meant to provide; he alleged only that he was given the medications without his consent. None of plaintiff's allegations involved defendant diagnosing plaintiff with any condition; he alleged only that defendant prescribed and caused the administration of medications without his consent. Contrary to defendant's contention, we discern nothing in plaintiff's allegations that implicates an alleged error in diagnosing plaintiff or providing his medical treatment. Instead, plaintiff steadfastly alleged that he did not consent to taking any medications. Accordingly, we reject defendant's argument.

¶ 39 Defendant argues that several cases cited by plaintiff in support of his contention that count IX is not subject to the requirements of section 2-622 do not themselves reference section 2-622 and so are inapposite. If we agree with defendant, for the sake of argument, we nevertheless arrive at the same conclusion. In reaching our determination above, we did not rely on *Gaskin v. Goldwasser*, 166 Ill. App. 3d 996 (1988), *Mink v. University of Chicago*, 460 F. Supp. 713 (N.D. Ill. 1978), *In re Estate of Allen*, 365 Ill. App. 3d 378 (2006), or *Hernandez v. Schittek*, 305 Ill. App. 3d 925 (1999). Accordingly, even if we accept that these cases are entirely inapposite, such a conclusion does not avail defendant.

¶ 40 Defendant next challenges plaintiff's argument that, in cases where the injury claims involve medical care but are not beyond the ken of laypersons, section 2-622 does not apply. As in the preceding paragraph, we do not need to pass on the propriety of such a principle. Rather, by analyzing section 2-622, its purpose, and the law interpreting it, we have concluded that, irrespective of any broad principle, plaintiff's claim in count IX is not subject to section 2-622. Accordingly, even if we agree with defendant that plaintiff has overstated the holdings of the cases he cites and thus mistakenly drawn the challenged principle, we have arrived at our conclusion from a different direction and rejecting plaintiff's argument would not affect our conclusion.

¶ 41 Defendant argues that plaintiff's allegations raise issues of the proper standard of care for persons with Lewy body dementia and whether Paxil is contraindicated for that condition. We disagree. Plaintiff alleged that he did not consent to taking Paxil (or any other drugs

administered to him) but was nevertheless given Paxil (and the other drugs). This does not raise a standard-of-care issue or the issue of whether Paxil was appropriate for a patient with plaintiff's ailments. It instead avoids the issues sounding in the healing arts and raises solely the question of whether defendant committed an unauthorized touching of plaintiff by prescribing Paxil and the other drugs that were then administered to plaintiff. Accordingly, the standard of care for Lewy body dementia and for the administration of Paxil and the other drugs is not relevant.

¶ 42    In making the argument that plaintiff's case involves medical diagnoses and medical treatments beyond the ken of the average juror, defendant purports to distinguish the cases plaintiff relies on. In particular, defendant contends that the facts in both *Mooney v. Graham Hospital Ass'n*, 160 Ill. App. 3d 376 (1987), and *Edelin v. Westlake Community Hospital*, 157 Ill. App. 3d 857 (1987), are distinguishable from the facts of this case, because they involved slips and falls and this case involves medical treatment. We note that we did not rely on either *Mooney* or *Edelin* or on plaintiff's interpretation of those cases. Thus, even if the two cases are distinguishable, it does not affect our analysis. Moreover, because *Mooney* and *Edelin* did not involve healing art malpractice, it appears that they would provide at least minimal guidance in this case, which also does not involve healing art malpractice.

¶ 43    Defendant also purports to distinguish another case, *Cohen v. Smith*, 269 Ill. App. 3d 1087 (1995), although conceding that it is the case plaintiff cites that is most closely on point. Once again, we did not rely on *Cohen* or plaintiff's argument based on *Cohen*, so even if we accepted defendant's argument about its distinguishability, it would not be germane to our analysis. Defendant also argues that plaintiff raises *Cohen* for the first time on appeal and that both the trial court and defendant did not have an opportunity to consider or respond to that case below. While defendant does not actually invoke waiver or forfeiture, he implies that we should consider the point in *Cohen* waived or forfeited. Defendant cites no case supporting his implied point that not only must an argument be raised before the trial court, but the precise authority relied on to support the argument must also be raised below. We are unaware of such a requirement and reject the point.

¶ 44    Additionally, we believe that *Cohen* is not distinguishable and offers substantial guidance. In *Cohen*, the plaintiff had religious objections to being seen or touched by a member of the opposite sex when she was unclothed, and she explained this to the hospital staff as she was being readied for a cesarean section. *Id.* at 1088. A male nurse allegedly saw and touched the plaintiff's naked body, and the plaintiff sued for battery. *Id.* at 1089. The appellate court noted that the plaintiff had not consented to the touching at issue and that she plainly stated a claim for battery. However, because the conduct took place in a hospital, the defendants sought to shield themselves from the claim by calling it a medical malpractice claim. *Id.* at 1092-93. The court reasoned that in such a claim the plaintiff must allege facts bringing the claim within healing arts malpractice, not simply allege that the conduct took place in a hospital-like setting "or involved some medical treatment." *Id.* at 1093. The court held that, because the plaintiff alleged a battery, a section 2-622 report was unnecessary. *Id.*

¶ 45    Defendant seeks to distinguish *Cohen* on the ground that it involved a physical touching by one of the defendants. Defendant is, of course, correct that *Cohen* involved physical contact between one of the defendants and the plaintiff, while in this case there was no direct physical contact between defendant and plaintiff. However, the point in *Cohen* was that the plaintiff did not consent to the contact; likewise, here, plaintiff did not consent to the

administration of the medications that were prescribed by defendant. In both cases, what gave rise to the plaintiffs' injuries was not the fact of the contact or the fact of administering the medications, but the fact that the plaintiffs' wills were ignored and the fact that conduct occurred that they expressly forbade. Accordingly, we do not see the lack of direct physical contact in this case as sufficiently distinguishing to make *Cohen* inapposite.

¶ 46 Defendant argues that he used his medical judgment in prescribing Paxil and the other medications used on plaintiff and that it is the medical judgment that throws this case into the realm of healing art malpractice. That argument might carry weight if plaintiff had alleged that defendant gave him the wrong medications for his conditions. However, plaintiff alleged that defendant ignored the fact that he did not consent to take any medication at all without prior consultation and consent and that defendant neither consulted with plaintiff nor gained (or even sought) his consent to the medications defendant prescribed and caused to be administered. In that sense, this case closely parallels *Cohen*, and we reject defendant's contention.

¶ 47 Defendant also argues that this case "deals with the scope of the consent provided." We disagree. Plaintiff alleged that he withheld consent to the administration of any drug without prior consent. There is no scope of consent where consent is categorically withheld. We reject defendant's attempt to recharacterize plaintiff's actual allegations.

¶ 48 Moreover, defendant supports his contention not by citing the allegations common to both claims or within the medical battery claim, but by citing an allegation within the civil conspiracy claim. Defendant justifies this not by saying that a complaint should be read as a whole, but by claiming that "a plaintiff 'should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical malpractice,' " quoting *Holzrichter*, 2013 IL App (1st) 110287, ¶ 88. We fail to see how an allegation wrenched from a different claim constitutes an attempt to avoid the applicability of section 2-622 to a medical malpractice claim. Further, we do not believe that alleging a complete lack of consent to the administration of any medication implicates healing art malpractice. Accordingly, we reject defendant's contention.

¶ 49 Defendant also argues that plaintiff alleged that a side effect of the medications administered to him caused his injuries. We do not accept that characterization. Plaintiff alleged that he was injured due to defendant's conduct of prescribing the medications and causing them to be administered to him without his consent. Thus, plaintiff alleged that the injuries stemmed from the nonconsensual prescription and administration of the medications. Section 2-622 applies only where a plaintiff is seeking "damages for injuries *** [caused] by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2-622(a) (West 2014). Plaintiff seeks to recover damages not for injuries that were caused by medical, hospital, or other healing art malpractice, but for injuries that were caused by a battery committed in a healing art setting; consequently, section 2-622 does not apply to plaintiff's claim of medical battery. Accordingly, we hold that the trial court erred in dismissing plaintiff's claim of medical battery and we reverse its judgment on that issue.

¶ 50 B. Propriety of Pleading Punitive Damages

¶ 51 Relying on *Voyles v. Sandia Mortgage Corp.*, 311 Ill. App. 3d 649, 659-60 (2000), *rev'd on other grounds*, 196 Ill. 2d 288 (2001), plaintiff next argues that, because he pleaded a claim for the intentional tort of medical battery, his request for punitive damages was not

- 11 -

subject to section 2-604.1 of the Code (735 ILCS 5/2-604.1 (West 2014)). Plaintiff concludes that the trial court thus erred in striking his request for punitive damages. Plaintiff's contention raises a point of statutory interpretation, which presents a question of law and which we review *de novo*. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 15.

¶ 52    Section 2-604.1 provides, pertinently: "In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages." 735 ILCS 5/2-604.1 (West 2014). Plaintiff's argument appears to be firmly rooted in the pertinent language of section 2-604.1. The cardinal principle of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552-53 (2006). The best indication of that intent is the language used in a provision, given its plain and ordinary meaning. *Id.* at 553. Further, if the statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 21.

¶ 53    The operative language of section 2-604.1 states that "[i]n all actions *** based on negligence *** no complaint shall be filed containing a prayer for relief seeking punitive damages." 735 ILCS 5/2-604.1 (West 2014). The remainder of the passage modifies the operative language. The phrase, "on account of bodily injury or physical damage to property," modifies "actions." *Id.* Likewise, the phrase, "where punitive damages are permitted," modifies "actions." *Id.* Finally, the provision prohibits filing a complaint in an action based on negligence "containing a prayer for relief seeking punitive damages." *Id.* Based on this analysis of the elements of the pertinent and operative language of section 2-604.1, we agree with plaintiff that the provision applies only to a negligence or product liability action and not to any other type of action, such as an intentional tort.

¶ 54    Plaintiff relies on *Voyles*, 311 Ill. App. 3d at 659-60, in which this court held that section 2-604.1 did not apply to an action for an intentional tort, intentional interference with prospective economic advantage. *Voyles* was reversed by our supreme court (*Voyles*, 196 Ill. 2d 288), but the supreme court did not mention section 2-604.1, let alone engage in an analysis of the provision. Instead, the court held that the plaintiff had not made a sufficient showing of all of the elements of the alleged cause of action. *Id.* at 301. Thus, the reversal in *Voyles* did not reach our analysis regarding section 2-604.1.

¶ 55    We note that the First District Appellate Court, in *LaSalle National Bank v. Willis*, 378 Ill. App. 3d 307, 327 (2007), held that the supreme court's holding in *Voyles* entirely abrogated our decision, including our conclusion as to the nonapplicability of section 2-604.1. We also note, however, that *Willis* did not itself undertake an analysis of section 2-604.1, and that it appears to have conflated our analysis of section 2-604.1 (*Voyles*, 311 Ill. App. 3d at 659-60) with the supreme court's review of the sufficiency of the elements of the cause of action (*Voyles*, 196 Ill. 2d at 301). *Willis*, 378 Ill. App. 3d at 327. With this said, we will accept, for the sake of argument, that plaintiff's reliance on *Voyles*, 311 Ill. App. 3d at 659-60, is at least suspect. Taking away the prop of *Voyles* results in no harm to plaintiff's argument because, as we have demonstrated above (*supra* ¶ 53), simply reading the pertinent and operative language of section 2-604.1 results in the conclusion that it applies only to negligence-based causes of action.

- 12 -

¶ 56    Notwithstanding our analysis of the provision, we further note that it has been held that section 2-604.1 applies to the entire action, so a request for punitive damages is not allowed where even part of the complaint sounds in negligence. *Willis*, 378 Ill. App. 3d at 326; *Penn v. Gerig*, 334 Ill. App. 3d 345, 356 (2002); *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1072 (1999). *Willis* and *Penn* both offer only citation to *McCann* and do not undertake any sort of additional analysis of section 2-604.1. *Willis*, 378 Ill. App. 3d at 326; *Penn*, 334 Ill. App. 3d at 356. *McCann* views the section 2-604.1 reference to "actions" as referring to complaints rather than the counts of a complaint. *McCann*, 308 Ill. App. 3d at 1072. We think that "actions" might be a little less clear and more flexible than *McCann* seems to believe. While "action" may refer to a complaint, it may also refer to a cause of action or claim (or, as in *McCann*, count). This is especially evident if a plaintiff were to engage in alternative pleading and set forth a claim based on negligence and, alternatively, a claim based on an intentional tort: it would not make sense, based on our reading of section 2-604.1 as not applying to intentional torts, to preclude a request for punitive damages in a claim for an intentional tort simply because the plaintiff chose to also plead a claim sounding in negligence. We do not need to determine, however, whether we will follow *McCann*, *Penn*, and *Willis*, because, in this case, plaintiff has not pleaded any negligence-based claims; plaintiff has pleaded only intentional-tort-based claims, so *McCann* (and *Penn* and *Willis*) are simply not applicable.

¶ 57    Defendant argues that the allegations of plaintiff's medical battery claim "necessarily implicate medical judgment, and thus fall within a claim of medical negligence," thus requiring the application of section 2-604.1. Defendant accuses plaintiff of being disingenuous because plaintiff alleged that defendant's "course of action in prescribing and facilitating the administration of medications to Plaintiff *** was committed with actual malice, deliberate violence, and/or with such gross negligence as to indicate a wanton disregard of Plaintiff's rights." Apparently, defendant's accusation of disingenuousness stems from plaintiff's word choice and including the terms "negligence" and "wanton" in the allegation. However, this allegation does not invoke negligence; rather, it describes defendant's alleged conduct as sufficiently egregious to qualify for an award of punitive damages. Our examination of the two counts against defendant reveals that, contrary to defendant's contention, only intentional torts are pleaded. *Gragg*, 297 Ill. App. 3d at 645 (intentional tort of medical battery is defined by the injured party's total lack of consent to a medical procedure); *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) (civil conspiracy is an intentional tort). Further, our examination of the second amended complaint as a whole also reveals that plaintiff's claims do not sound in negligence, so *Willis*, *Penn*, and *McCann* do not apply. Accordingly, we reject both defendant's contention and his *ad hominem* attack on plaintiff.

¶ 58    Defendant also argues that the trial court appropriately struck the request for punitive damages, because the claim for medical battery was not properly pleaded owing to plaintiff's failure to comply with the requirements of section 2-622. This argument does not actually address any issues under section 2-604.1. In any event, the argument fails because we held above that plaintiff's claim for medical battery is not subject to section 2-622, and so it was properly pleaded.

¶ 59    Ultimately, then, we are left with the plain language of the provision, which applies only to actions or claims sounding in negligence, and the fact that plaintiff's claims do not sound

in negligence. Based on our consideration above, we hold that section 2-604.1 is not applicable under the facts alleged in this case and that the trial court erred in striking plaintiff's request for punitive damages.

¶ 60                        C. Adequacy of Civil Conspiracy Claim

¶ 61        Plaintiff argues that the trial court erred in dismissing his claim of civil conspiracy (count X) for failing to state a claim pursuant to section 2-615 (735 ILCS 5/2-615 (West 2014)). Plaintiff argues that his allegations satisfied the pleading requirements for a civil conspiracy claim. Defendant argues that plaintiff failed to identify the relationship between himself and Bickford, the duty that defendant owed to plaintiff, and why, how, or when defendant became involved with plaintiff. We begin by considering the elements necessary to plead a claim of civil conspiracy.

¶ 62        The elements of civil conspiracy are (1) a combination of two or more persons (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). A civil conspiracy claim extends liability in tort beyond the active tortfeasor to those who have planned, assisted, or encouraged the tortfeasor's conduct. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). The agreement between the conspirators does not take on the same importance as in a criminal conspiracy. *Id.* at 62-63. An agreement to commit a wrongful act is not a tort, even if that agreement might be a crime. *Id.* at 63. An action for civil conspiracy exists only if one of the parties to the agreement commits a tortious act in furtherance of the agreement; the gist of the claim of civil conspiracy is not the agreement, but the tortious act carried out in furtherance of the agreement. *Id.* It is only when the tort is committed that the conspirators who have not acted but have promoted the act will be held liable. *Id.*

¶ 63        With these principles in mind, we turn to plaintiff's allegations. Plaintiff alleged that the scheme between defendant and Bickford was to improperly chemically restrain plaintiff to make it easier for the staff at Bickford to deal with him. To that end, Bickford used defendant to prescribe for plaintiff medications with the desired effect of acting as a chemical restraint. Plaintiff alleged that the conduct violated the Nursing Home Care Act. Because both Bickford and defendant were acting toward the purpose of chemically restraining plaintiff, they were acting in concert. Plaintiff alleged that the overt acts were the prescription of the medications by defendant and the administration of them by Bickford under defendant's auspices.

¶ 64        Defendant contends that these allegations are insufficient to state a claim. First, defendant argues that the allegations are conclusory. Defendant argues, citing *Fritz*, 209 Ill. 2d at 318, that the allegations amount only to a statement that defendant and Bickford conspired, which is insufficient. We disagree.[3] Plaintiff is required to allege facts, but need allege only the ultimate facts that must be proved, not evidentiary facts. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). We determine that plaintiff has sufficiently pleaded factual allegations to support his claim. Accordingly, we reject defendant's argument that plaintiff's allegations are conclusory.

---

[3]Defendant has correctly cited *Fritz*, but the case is inapposite.

¶ 65    Defendant contends that plaintiff did not allege the nature of any relationship between defendant and Bickford. Defendant contends that plaintiff did not specify when defendant and Bickford supposedly formed the civil conspiracy or why. Defendant elaborates that plaintiff did not allege that defendant had access to plaintiff's medical chart, that he was advised that plaintiff specifically was not to take Paxil, or that prior consent was required before any medication could be administered. Finally, defendant argues that plaintiff did not allege that defendant committed any unlawful act or that he committed any lawful act by unlawful means. We disagree.

¶ 66    The nature of defendant's relationship with Bickford, *vis-à-vis* plaintiff, is apparent in the allegations. Plaintiff alleged that Bickford called upon defendant when plaintiff was deemed a burdensome patient and that Bickford wished to chemically restrain plaintiff. The implication arising from these allegations is that defendant was the physician to whom Bickford turned when a burdensome patient needed to be neutralized. Thus, we believe that the nature of the relationship, to the extent that it needs to be alleged, can be inferred from plaintiff's allegations.

¶ 67    Defendant's contention that plaintiff did not allege any connection between plaintiff and defendant does not, in our estimation, cut against the viability of the claim; rather it supports the inference of an agreement between Bickford and defendant to chemically restrain plaintiff. Plaintiff alleged that he never saw, consulted, or had contact with defendant, yet defendant prescribed various medications to plaintiff. This unusual circumstance is inexplicable unless defendant and Bickford had some agreement that defendant would prescribe medications that Bickford wanted, such as medications that would have the effect of chemically restraining a patient, even in the absence of a doctor-patient relationship. On the other hand, if defendant had a relationship with plaintiff, then the conspiracy claim would likely face an insuperable hurdle because it would not be at all unusual for a doctor to prescribe medications to his patient. Similarly, defendant's assertion that plaintiff did not allege that defendant even had access to plaintiff's medical chart reinforces the conclusion arising from the lack of a doctor-patient relationship: that defendant was at Bickford's beck and call to prescribe medications when Bickford wished to minimize the burden plaintiff posed to its staff.

¶ 68    Plaintiff also alleged that Bickford violated the Nursing Home Care Act by administering the medications prescribed by defendant. This satisfies the unlawful act element of the claim and rebuts defendant's contention that plaintiff did not allege that element.

¶ 69    Defendant raises specific issues with plaintiff's allegations, and we discuss these in turn. Defendant first notes that an "agreement" is a necessary element of a civil conspiracy cause of action. Proof of an agreement includes the defendant's knowing and voluntary participation in a common scheme to commit an unlawful act or a lawful act in an unlawful manner. *McClure*, 188 Ill. 2d at 133. Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy; likewise, the innocent performance of an act that fortuitously furthers the tortious purpose of another is not actionable under the theory of conspiracy. Defendant contends that the allegations here do not suggest that his conduct was anything other than innocent, inadvertent, or, worst case, negligent.

¶ 70    Defendant first points out that plaintiff alleged that Bickford, not he, possessed plaintiff's medical chart and that defendant had never met plaintiff. Defendant asks why he would have entered a conspiracy to chemically restrain a patient he had never met. Defendant

misapprehends the significance of the allegations he highlights. Indeed, the rational question is why a doctor would enter a prescription for a patient he had never met. The answer, and this is fairly implied by plaintiff's complaint, is that the doctor is getting something in return. Generally, the doctor gets the patient's fees, but in this case the allegations imply that defendant received something from Bickford. In other words, defendant agreed to perform services for Bickford, specifically to prescribe medications that had the effect of chemically restraining plaintiff, and thus was born the agreement at the foundation of the conspiracy. Viewed in the light most favorable to plaintiff, the allegations and the resulting inferences are sufficient to satisfy the agreement element of the claim of a civil conspiracy.

¶ 71    Defendant faults plaintiff for not pleading the dates when Paxil and the other medications were prescribed. We do not view this as fatal. Plaintiff has alleged the existence of a general agreement for defendant to prescribe Paxil and the other medications in order to chemically restrain plaintiff for the ease of Bickford's staff in dealing with plaintiff. Plaintiff alleged or implied that this conduct occurred frequently during his stay at the Bickford facility. This is sufficient. The dates and times are the sort of evidentiary facts that need not be pleaded. *Chandler*, 207 Ill. 2d at 348.

¶ 72    Defendant also contends that the allegation of an unlawful act is insufficient. Defendant argues that the only unlawful act alleged is the violation of the Nursing Home Care Act, which does not apply to individuals. See *Childs v. Pinnacle Health Care, LLC*, 399 Ill. App. 3d 167, 180 (2010) (Nursing Home Care Act does not apply to individuals or individual healthcare providers). Defendant claims that he "cannot conspire to commit an illegal act if the law is not applicable to him." This is flatly incorrect.[4] The purpose of a civil conspiracy claim is to reach beyond the tortfeasor to others who helped to plan, implement, and encourage the unlawful act; there is no requirement that such a party actually committed the tort him- or herself, only that a tort was ultimately committed. *Adcock*, 164 Ill. 2d at 63. Here, plaintiff has alleged that defendant contributed to the violation of the Nursing Home Care Act by prescribing medications having the effect of chemically restraining him and that Bickford administered the medications in violation of the Nursing Home Care Act. This is adequate at this stage in the proceedings. As *Adcock* noted, the gist of a conspiracy claim is the tortious act furthering the conspiratorial agreement. *Id.* Liability is imposed on a conspirator who did not perform the act. *Id.* Here, plaintiff alleged that defendant participated, but personally did not violate, the Nursing Home Care Act. Instead, Bickford violated the Nursing Home Care Act, thereby triggering liability for defendant. We reject defendant's contention.

¶ 73    Defendant argues that there must be an independent cause of action on which to base a claim of civil conspiracy. See *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000) ("a conspiracy is not an independent tort"; if "a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails"). However, plaintiff alleged that Bickford violated the Nursing Home

---

[4]We note that, in support of this claim, defendant cites *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 108-09 (2003), and *Childs*, 399 Ill. App. 3d at 180. But these cases deal only with whether individuals other than the owners and operators of nursing homes are liable under the Nursing Home Care Act, and they do not stand for the proposition that a defendant's liability for conspiracy depends on whether the statute violated applies to the defendant individually.

- 16 -

Care Act, and this is the independent cause of action that underlies the conspiracy claim against defendant. See *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434 (1991) (violation of a statute designed to protect human life is tortious conduct). Plaintiff has alleged an underlying independent cause of action on which to base his claim of civil conspiracy. We reject defendant's argument.

¶ 74    We have rejected defendant's arguments against the sufficiency of plaintiff's claim of civil conspiracy. We conclude that plaintiff has sufficiently alleged each element necessary to state a claim of civil conspiracy. Accordingly, we hold that the trial court erred in dismissing plaintiff's claim of civil conspiracy (count X) for failure to state a claim.

¶ 75                                III. CONCLUSION

¶ 76    For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings consistent with this opinion.

¶ 77    Reversed and remanded.